**Lee Ann GROSSNICKLE, Appellant,**

v.

**Richard Dean GROSSNICKLE, Appellee.**

**No. 06–95–00008–CV.**

Court of Appeals of Texas,
Texarkana.

Oct. 10, 1996.

Lee Ann Grossnickle, Texarkana, pro se.

Edward E. Ellis, Ellis & Clark, Paris, for appellee.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

GRANT, Justice.

Lee Ann Grossnickle appeals from the division of marital property entered in connection with her divorce from Richard Dean Grossnickle.

Richard Grossnickle and Lee Ann Grossnickle married in 1981. Richard Grossnickle filed for divorce in November 1988. The first trial in this case was heard in District Court in December 1991, and the divorce was granted on April 2, 1992. Lee Ann Grossnickle appealed from the property division. She prevailed in this Court and obtained a new trial on the property division because she had timely requested a jury trial and had been denied that right. *Grossnickle v. Grossnickle*, 865 S.W.2d 211 (Tex.App.—Texarkana 1993, no writ). The remand was on the property division only. *Id.*

After being granted a new trial on her failure to be provided a jury trial, Lee Ann Grossnickle then waived her right to a jury trial on the property division, and the case was heard by the trial court. The trial court signed the judgment on the property division (Modified Judgment) on October 31, 1994, and findings of fact and conclusions of law were entered by the court.

Lee Ann Grossnickle appeals once again from the property division by the trial court, contending the trial court erred

1) by not entering additional findings of fact and conclusions of law, and she asks this Court to remand the case to the trial court so that she can seek those additional findings or conclusions;

2) by setting a certain value on the ranch because the evidence presented by Richard Grossnickle was not provided during discovery, the evaluations were from 1992 (time of divorce) instead of 1994 (time of second trial), and Richard Grossnickle's expert witness mixed property values in 1994 with the mortgage in 1992 to obtain his projected value of the ranch;

3) by valuing the cattle as of 1994 because there was no factual or legal evidence supporting that value;

4) by allowing into evidence general ledgers reflecting Richard Grossnickle's business income and liabilities instead of requiring production of the underlying documents. She also complains that the liabilities indicated by the ledger are not supported by the other evidence admitted.

5) by failing to consider positive tax consequences of Richard Grossnickle's payment of interest on the liabilities and by refusing to compel Richard Grossnickle to produce his 1992 income tax return;

6) by refusing to consider Richard Grossnickle's earnings pending appeal when dividing the community estate;

7) by including in the court's inventory separate property jewelry belonging to Lee Ann Grossnickle;

8) by not making a specific finding about the engagement ring that Lee Ann Grossnickle threw at Richard Grossnickle and by failing to specifically award the ring to Lee Ann Grossnickle as her separate property;

9) by failing to consider the value of specific bank accounts;

10) by admitting expert testimony about the value of Richard Grossnickle's optical shop, even though Richard Grossnickle had failed to produce the documents upon which that testimony was based;

11) by finding that Lee Ann Grossnickle was responsible for physical deterioration of the community property home pending appeal and that the home accordingly declined in value. In a related complaint, Lee Ann Grossnickle also contends that she was forced to sell the house to Richard Grossnickle for $95,000, when she had earlier had an offer of $130,000 from a third party that Richard Grossnickle had refused to accept;

12) by not determining the value of the home at the time that it was transferred to her, rather than after it had deteriorated, because it deteriorated due to Richard Grossnickle's breach of a fiduciary duty by refusing to transfer funds to her with which to maintain the house;

13) by failing to take into account Richard Grossnickle's payment of his attorney's fees for the divorce from community funds;

14) by not reducing the face value of the Vanguard retirement account ($363,000) to reflect its actual value, considering a ten percent penalty for early withdrawal and the thirty-three percent federal income tax to be levied against the amount as income to her;

15) by not considering $8,000 withdrawn by Richard Grossnickle from the Vanguard account and by considering the $16,000 individual retirement account that Lee Ann Grossnickle had expended between 1992 and 1994;

16) by not crediting the community estate for monies paid out on behalf of Richard Grossnickle's girlfriend;

17) by making a finding of fact that all parts of the previous order were withdrawn, because the appeal from the April 2, 1992 judgment was a limited appeal and the temporary spousal support and attorney's fees remain final;

18) by denying attorney's fees and temporary support pending appeal on the basis that the divorce was final and simultaneously denying use of the estate's assets after January 24, 1995 on the basis that the divorce was *not* final;

19) by issuing an order limiting Lee Ann Grossnickle's freedom of speech in contravention of the United States Constitution and the Texas Constitution;

20) by not identifying and valuing Richard Grossnickle's goodwill in his business and not dividing that value as part of the marital estate; and

21) by awarding a disproportionate amount of property to Richard Grossnickle.

The trial court's division of the property should be corrected on appeal only if the trial court clearly abused its discretion by ordering a division that is manifestly unjust and unfair. *McKnight v. McKnight*, 543 S.W.2d 863 (Tex.1976); *Martin v. Martin*, 797 S.W.2d 347, 351 (Tex.App.—Texarkana 1990, no writ). A presumption arises on appeal that the trial court correctly exercised its discretion in dividing property in a divorce proceeding, and the burden rests on the appellant to show from the record that the division was so disproportionate, and thus unjust and unfair, as to constitute an abuse of discretion. *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 509 (Tex.App.—Austin 1994, no writ); *Martin*, 797 S.W.2d at 351. A court of appeals should remand the entire community estate for a new division if it finds reversible error in a specific part of the division that materially affects the trial court's just and right division of the entire community estate. *Jacobs v. Jacobs*, 687 S.W.2d 731 (Tex.1985).

In this case, the trial court issued findings of fact and conclusions of law. Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). Findings of fact are not conclusive, however, when the record includes a complete statement of facts. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex. App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985).

We must first address a matter not raised by a point of error on appeal, but which relates to the property valuations in this case. This concerns the date for determination of the value of the community as-

sets. Generally, community assets are to be evaluated as of the time of the divorce, and subsequent increases in value are separate property. *Sutherland v. Cobern*, 843 S.W.2d 127 (Tex.App.—Texarkana 1992, writ denied). At least one court has held that the determination of whether to use the time of the divorce or the time of division as the valuation date of an asset, when the divorce and division of the property occur at different dates, is so fact-specific that it should be left to the discretion of the trial judge in order to avoid possible inequities that could result from a bright-line rule. *Parker v. Parker*, 897 S.W.2d 918, 932 (Tex.App.—Fort Worth 1995, writ denied). In spite of the flexibility that may be given to the court in limited situations for the purposes of equity, the better rule—and the rule generally followed in Texas—is to value the community assets as of the date of the divorce. *Baccus v. Baccus*, 808 S.W.2d 694 (Tex.App.—Beaumont 1991, no writ); *May v. May*, 716 S.W.2d 705 (Tex.App.—Corpus Christi 1986, no writ).

In the present case, some of the arguments underscore the problem of the trial court's failure to use consistently the date of the divorce as the time of evaluation.

Lee Ann Grossnickle specifically filed a motion asking that the property be evaluated as of the date of the new trial and not on the date of the divorce. She cannot now complain of the use of the date of the new trial (1994) for evaluation. Her specific complaint, however, is that the trial court abused its discretion in entering a pretrial order to the effect that the 1992 values would be used and then using the current values (1994) in its valuation of the cattle. She states that because of such ruling she was not prepared to go forward with evidence of 1994 values and that she was not allowed to make any discovery concerning the 1994 values of the herd of cattle. The pretrial order by the court did not provide that the date of the

divorce (1992) would be the date used for the evaluation; rather it provided that the trial court would determine the division of the property *"that existed* on April 2, 1992." This language appears twice in the order. In another place in the pretrial order, the parties were allowed to discover all relevant matters "to determine the inventory of the community estate on April 2, 1992." In the pretrial order, the trial court did not limit the evidence to the 1992 values, but rather limited the division to the property held by the community on that date.

■ Lee Ann Grossnickle first contends that this Court should remand this case to the trial court so that she can file requests for additional findings of fact and conclusions of law. In numerous motions and petitions for mandamus she has filed with this Court, she has characterized the findings of fact and conclusions of law made by the trial court[1] as secret findings, alleging that they were never sent to her. Based upon this allegation, she complains that she was not afforded the opportunity to file a request for amended or additional findings of fact as set out by TEX.R. CIV. P. 298.

The record reflects that the findings were signed on October 21, 1994. Lee Ann Grossnickle filed a document designated as a bystander's bill, stating that she had no knowledge that these findings had been made until March 1995. In a response to the document, a deputy clerk swore in an affidavit that she mailed a copy to each attorney in the case on October 25, 1994.

■ The document filed by Lee Ann Grossnickle does not meet the requirements of a bystander's bill. Texas Rule of Appellate Procedure 52(c) sets out the requirements for a bystander's bill. This rule requires that a formal bill of exception first be presented to the judge, and then if the party is dissatisfied with the action of the judge,

1. Lee Ann Grossnickle also argues under this point of error that impropriety occurred because the filed findings and conclusions were prepared by counsel for Richard Grossnickle. This is a standard practice. The prevailing party at a trial court is usually instructed to prepare findings of fact and conclusions of law and a proposed judgment based upon the trial court's rulings when appropriately requested. This is not an impropriety, because the judge is not bound to accept these drafts as submitted, but may make changes or completely rewrite the proposed document. It has been described as clerical in nature, appropriate, and not a ground for error. *Berkman v. D.M. Oberman Mfg. Co.*, 230 S.W. 838, 840 (Tex.Civ.App.—Austin 1921, writ dism'd).

the party may procure the signatures of three respectable bystanders, citizens of this state, attesting to the correctness of the bill that the party has filed. This procedure was not followed in the present case, nor was a hearing requested to make an offer of proof of conduct occurring outside the courtroom as is permitted under TEX.R.APP. P. 52(b). As recognized by this Court in *Circle Y of Yoakum v. Blevins,* 826 S.W.2d 753 (Tex. App.—Texarkana 1992, writ denied), when the affiants are attorneys or parties in the case, the bill is defective. The term *bystander* relates to one who has no concern in the outcome of the case on trial. In this case, Lee Ann Grossnickle, sometimes acting as her own attorney, her attorney Danny Woodson, and a paralegal for Woodson's law firm provided the affidavits. Thus, no disinterested persons provided affidavits as required for a bystander's bill.

The document in the present case attempts to inform this Court about actions not taken by the district clerk's office. We construe these affidavits as supporting Lee Ann Grossnickle's motion to abate for an opportunity to file a request for additional findings of fact and conclusions of law, as authorized by TEX.R.APP. P. 19(d).

Lee Ann Grossnickle also argues that this Court should not consider the response to her bystander's bill. Lee Ann Grossnickle asked this Court to refuse to file or consider the response because any controverting affidavits to a bystander's bill are to be filed within ten days of the bill itself. TEX.R.APP. P. 52(c)(8). Because it is not a bystander's bill, this rule has no application. She also opines that, because the fifteen-day grace period has passed since the filing of the original transcript, no supplements can be filed. This statement is incorrect, as supplemental transcripts may be filed as found to be appropriate by this Court. TEX.R.APP. P. 55(b).

The remaining question is the meaning of the language of TEX.R. CIV. P. 297 stating, without any deadline included, that "[t]he court shall cause a copy of its findings and conclusions to be mailed to each party in the suit." Rule 298 states that any request for additional or amended findings "shall be made within ten days after the filing of the original findings and conclusions by the court." This rule should be changed to allow requests for additional or amended findings of fact based upon the critical time when the original findings and conclusions are either mailed or received.

■ Rule 298 contemplates that the request for further findings should specify the additional or amended findings that the party making the request desires the trial court to make and file. *Wagner v. Riske,* 142 Tex. 337, 178 S.W.2d 117, 119–20 (1944); *Alvarez v. Espinoza,* 844 S.W.2d 238, 241 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.). In the instant case, the appellant specifies the following additional or amended findings that she requests the trial court to make and file:

1) the value of the good will of the medical practice,

2) the consideration given to the income of the parties pending appeal,

3) the characterization of a diamond bracelet and ring,

4) whether office furniture was included in the list of the "medical equipment and fixtures" provided in the findings made,

5) the consideration, if any, given to tax consequences of withdrawal of the Vanguard account,

6) the value of the mortgage on the ranch and office in 1994, and

7) whether 1992 tax liabilities were considered.

■ Rule 298 requires the trial court to make additional findings of fact and conclusions of law only if they relate to ultimate or controlling issues. *Associated Telephone Directory Publishers v. Five D's Publishing Co.,* 849 S.W.2d 894, 901 (Tex.App.—Austin 1993, no writ). The trial court is not required to make additional findings that are unsupported in the record, that relate merely to other evidentiary matters, or that are contrary to other previous findings. *Rafferty v. Finstad,* 903 S.W.2d 374, 376 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Simmons v. Compania Financiera Libano,* 830 S.W.2d 789, 791–92 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

■ The need for additional findings on all the points set forth above are eliminated by the specific rulings by this Court under points of error discussing the substantive issues involved, except for additional requested Finding of Fact No. 4. This additional request would have asked the court to find whether office furniture was included in the term "medical equipment and fixtures." Appellant's brief does not sufficiently apprise this Court of the significance of this requested additional finding, whether it was supported by the evidence, whether it related to other evidentiary matters, or whether such was shown to be community property. Without appropriate references to the record, we cannot rule on this request, and this portion of the complaint was waived on appeal. This point of error is overruled.

Lee Ann Grossnickle next contends that the trial court erred in its valuation of the ranch because the evidence presented by Richard Grossnickle was not provided during discovery in response to interrogatories (postdating the first decree) and because the evaluations were from 1992 (time of divorce) instead of 1994 (time of trial on the property division).

Counsel for Lee Ann Grossnickle did not object to the admission of the written report of Richard Grossnickle's expert, William Patrick Murphy, that had been furnished in the 1992 trial or to Murphy's testimony about that report and his evaluation as of that date.[2] Richard Grossnickle's expert testified that the gross value of the ranch, both at the date of the divorce and the date of the new trial on the property division, was $426,000. On the other hand, Lee Ann Grossnickle's expert testified that the gross value of the ranch was $750,000, using the value at the time of the second trial, or $712,000, using the value at the time of the divorce.

■ Counsel for Lee Ann Grossnickle objected to any testimony by Murphy updating his report to a current evaluation some two years later. Counsel for Richard Grossnickle advised the opposing counsel by letter, characterized as a supplement to the 1992 report, that Murphy would testify as to the 1992 value and the 1994 value of the property. Counsel did not say what that testimony would be. Murphy's testimony was that the value had not changed. It is questionable whether any supplementation is required, even with the passage of time, for an expert to testify that in his opinion the value of property is the same. Rule 166b(6) of the Texas Rules of Civil Procedure sets forth a duty to supplement when a party obtains information making his response incorrect, incomplete, or misleading. A supplementation would be required if the expert had significantly changed his or her opinion as to the value because of the passage of time. It has been held, however, that whether an appraisal is near enough in time to the date of the divorce to be considered in determining the value of the land in question for purpose of the property division is generally left to the discretion of the trial court. *Finch v. Finch*, 825 S.W.2d 218 (Tex.App.— Houston [1st Dist.] 1992, no writ).

The problem in this case arose when Murphy testified on rebuttal about some comparable sales that occurred after the original report and after the first trial. Murphy was asked if he used the new comparables to form his opinion of the 1994 value of the property. Murphy twice testified that these new comparables formed the basis of his opinion that the value of the property did not change from 1992 to 1994.

Lee Ann Grossnickle takes the position that the opinion as to the value in 1994 should have been struck because of Richard Grossnickle's failure to supplement his expert's opinion. In ruling on this objection, the trial judge suggested that the production rule did not apply to this situation because the information was given on rebuttal. Rule 215(5) of the Texas Rules of Civil Procedure provides that the trial court can allow such

---

2. In a pretrial discussion, counsel for both parties agreed that the written reports furnished to opposing counsel would suffice in lieu of answers to the interrogatories actually requesting the experts' opinions. These statements to the court could not be construed as a stipulation beyond agreeing that these reports would be substituted for the actual answers to the interrogatories. It could not be construed to allow expert opinions based on a later report requiring supplementation that was not made.

evidence if it determines that good cause existed for the failure to complete the discovery request. In the case of *Klekar v. Southern Pacific Transp. Co.*, the court set forth four factors a trial court can consider in determining good cause. 874 S.W.2d 818 (Tex.App.—Houston [1st Dist.] 1994, writ denied). The third factor is the use of the witness in rebuttal in some circumstances. This opinion cites *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 916 n. 6 (Tex.1992). A footnote in *Alvarado* suggests that there may be some circumstances for admitting testimony of an undisclosed witness on rebuttal when the need for the testimony could not reasonably have been anticipated, but the Supreme Court does not give its blessing to a finding of good cause merely because the evidence happened to be presented on rebuttal.

■■■ In the present case, the underlying information that supported the expert's initial testimony and formed the basis of his opinion that the value of the property had not increased from the time of the 1992 trial until the 1994 trial did not come out until the rebuttal evidence was being offered. This does not mean that if a new report existed, it did not have to be furnished in the discovery process. It is the duty of counsel to advise expert witnesses to provide such reports timely so they can be furnished to opposing counsel.

As the Supreme Court points out in *Alvarado*, Rule 215(5) prescribes the sanction for failing to supplement discovery (830 S.W.2d at 915), and the rule has not changed in that regard since the 1992 Supreme Court opinion. The sanction is that when a party fails to identify evidence timely in response to a discovery request, the trial court must exclude all evidence not properly identified in discovery. This would include opinion evidence based upon the information not provided in the discovery. (The trial court also has discretion to postpone the trial and compen-

sate the non-offending party for any wasted expense in preparing for trial.) *Id.*

■■■ Lee Ann Grossnickle made the following request for production prior to the 1994 trial:

Any and all documents and tangible things, including all tangible reports, physical models, compilations of data, and other material, *prepared by an expert* who may be called as an expert witness or *for an expert in anticipation of the expert's trial or deposition testimony* and any such material prepared by an expert used for consultation. . . . [3]

(Emphasis added.)

Richard Grossnickle gave the following response:

This information is being prepared and will be exchanged with the Respondent once Respondent's expert reports and documents are ready to be exchanged with Petitioner.

The production request asked for tangible reports prepared by an expert or for an expert in anticipation of trial or deposition testimony. When Murphy was asked if he had made an appraisal to arrive at his updated opinion, he answered that he just made an oral update of his opinion, which was based upon comparables gathered every day by his office and used for other appraisals. He further testified that he did not furnish any of that work to the attorneys in the present case. The only evidence that suggested that anything was placed in writing was Murphy's statement that he handed the underlying information to the attorneys the day before his rebuttal testimony. The record is not clear whether this was a supplemental report prepared by Murphy or prepared for his testimony in this particular case, or was some of the data gathered daily by his office, which had been used by him for appraisals in other matters. The attorney for Richard Grossnickle represented to the court that the witness had not made an additional report, but

---

**3.** This generally tracks the language in Rule 166b(2)(e)(2) of the Texas Rules of Civil Procedure. Rule 166b(2)(e)(4) further provides that if the factual observations, tests, supporting data, calculations, photographs, or opinions of an expert have not been recorded and reduced to tangible form, the trial judge may order these matters reduced to tangible form and produced within a reasonable time before the date of trial. Such a reduction to tangible form was not requested in this case.

had simply been asked if there had been a change in value from 1992 to 1994. The trial court expressed an understanding that there was only a single report, the one furnished in discovery for the previous trial. Counsel for Lee Ann Grossnickle stated that he had no objection to the first opinion or report.

Based upon the wording of the discovery request in this case and the failure of the record to show that a second report existed that was prepared by the expert or for the expert's testimony, and alternatively, Lee Ann Grossnickle's failure to obtain a court order to reduce this information to a tangible form if it had not been put in such form, this Court finds the trial court did not err in failing to exclude this testimony.

Lee Ann Grossnickle further argues under this contention that, although the trial court found that Richard Grossnickle was not entitled to reimbursement from the community for funds he spent maintaining the community-owned ranch property since the divorce, the trial court, nevertheless, actually awarded Richard Grossnickle reimbursement for mortgage payments. In Conclusion of Law # 11, the trial judge found that "Petitioner is not entitled to reimbursement from the community for the funds he spent in maintaining the community-owned ranch properties since April 2, 1992."[4] The trial court acknowledged the cost to Richard Grossnickle of maintenance and improvement to the community-owned ranch property after the divorce and determined that this asset should be awarded to Richard Grossnickle without any reimbursement from the community. Lee Ann Grossnickle suggests that setting the value of the ranch based on the indebtedness at the time of the divorce, instead of the indebtedness at the time of the trial on the property division, in effect allows Richard Grossnickle reimbursement for his maintenance and payments on the property because

he is credited for those payments by the reduction of the amount of mortgage owed.[5] The trial court did not err by using this method to credit Richard Grossnickle for making the payments on the mortgage after the divorce.

■ Reimbursement for expenditures made on property may be offset by benefits such as usage by the party making these expenditures. *See Penick v. Penick,* 783 S.W.2d 194, 195 (Tex.1988); *see also Rogers v. Rogers,* 754 S.W.2d 236 (Tex.App.—Houston [1st Dist.] 1988, no writ). Richard Grossnickle testified that he continued to make the mortgage payments from April 1992 through August 1994. In addition to this, he testified that he also spent considerable sums of his after-divorce income on upkeep and improvements on the property.

■ Texas law requires that an effort be made to reconcile conflicts in findings of fact. *First Financial Dev. Corp. v. Hughston,* 797 S.W.2d 286, 294 (Tex.App.—Corpus Christi 1990, writ denied); *Yates Ford v. Benavides,* 684 S.W.2d 736, 739 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The same rule has been applied to conflicts between findings of fact and conclusions of law. *Hartford Ins. Co. v. Jiminez,* 814 S.W.2d 551 (Tex.App.—Houston [1st Dist.] 1991, no writ). This same reasoning should be applied in reconciling conclusions of law and the judgment. When two possible interpretations exist, the interpretation should be chosen that will harmonize the judgment with the findings of fact and conclusions of law upon which it is based.

■ The trial court in its conclusion of law provides that Richard Grossnickle will not be reimbursed for funds he spent in maintaining the community-owned ranch. The record contained evidence of other funds from Richard Grossnickle that were used to

---

4. The trial court's finding of fact was as follows:

Although Petitioner has spent considerable funds in the maintenance of the community owned ranch property since April 2, 1992, and such maintenance was vital to maintaining the value of the property, Petitioner personally enjoys owning and using the ranch to improve a special breed of cattle; one-half of the funds he spent benefitted himself by improving the com-

munity assets; and he receives considerable farm income tax deductions in arriving at his net taxable income each year, resulting in considerable tax savings to Petitioner.

5. The trial court valued the ranch at $426,000, subject to the mortgage amount that remained payable at the date of divorce, (in the amount of $303,000), leaving a net value of $123,000.

maintain the physical assets of the ranch. *Maintaining* does not necessarily include his right of offset against the indebtedness for making the mortgage payment and is not necessarily included in the trial court's conclusion of law. This conclusion of law can be construed as consistent with the judgment in that there was no money allotted from the community assets to reimburse Richard Grossnickle for upkeep of the property as stated in the conclusion of law, but, in effect, an offset was allowed for the payments made on the property after the divorce because these payments reduced the mortgage owed. This point of error is overruled.

Lee Ann Grossnickle next contends that the trial court erred in considering the 1994 value of the cattle because there was no factual or legal evidence supporting that value. She complains that William Oakley, Richard Grossnickle's expert on the value of the cattle, had not inspected the cattle since 1991 and erroneously calculated a fifteen percent commission for the sale of the cattle when the actual sales commission should have been 5.8 percent. She urges that because of these errors, this testimony should not be considered.[6] Whether William Oakley had sufficient knowledge and basis upon which to evaluate the cattle was a matter that should have been preserved by an objection that counsel had failed to lay the proper predicate for its admission. We find no such objection. Counsel for Lee Ann Grossnickle stated that he did not have any objection to Oakley's testimony.

Richard Grossnickle's expert valuated the cattle at $222,000 at the date of the divorce, but the trial court reduced the value of the herd because of this expert's testimony that the market value of Limousine cattle had decreased at the time of the new trial on the property division, finding the value to be $205,000.[7]

As previously stated, whether an appraisal is near enough in time to the date of the divorce to be considered in determining the value of the property in question for purpose of the property division is generally left to the discretion of the trial court. *Finch*, 825 S.W.2d 218. As the fact finder, the trial court had a right to decide between the figures offered by Lee Ann Grossnickle's expert and by Richard Grossnickle's expert. There was legally and factually sufficient evidence for the trial court to reach the valuation of the herd set forth in the findings of fact. This point of error is overruled.

◼ Lee Ann Grossnickle next contends that the trial court erred in allowing into evidence general ledgers reflecting Richard Grossnickle's business income and liabilities after the divorce instead of requiring production of the underlying documents. The ledgers contained summaries of expenses and income incurred at Richard Grossnickle's offices between the April 1992 divorce and the August 1994 trial. The trial court found that the underlying checks had been made available to Lee Ann Grossnickle. She specifically complains that this response to discovery was not timely and that other underlying instruments were not made available. If the checks were the sole basis of the ledgers, then other data would not generally be a prerequisite for its introduction. However, we shall not make a determination concerning whether the trial court should have applied a discovery sanction, because the trial court did not allow any of these expenditures.[8] This ledger was introduced for the

---

6. On cross-examination, Oakley testified that the actual calculations of the value of the herd should be $212,000, not $205,000.

7. Although Lee Ann Grossnickle does not complain on appeal of the inconsistency in using the market value at the time of the trial on the property division, two years after the divorce, but using the size of the herd at the time of the divorce, she was penalized by valuating the herd based on the loss in market value after the divorce, but not considering any calving that may have occurred to increase the herd after the divorce. This points up the problem of placing a

value on the assets two years after the divorce was granted. (Richard Grossnickle's expert did take into consideration the embryo value at the time of the divorce.) For the sake of consistency, the higher value of the herd as it existed at the time of the divorce should have been used, or alternatively, if the court was to use the value two years later, then it should have considered the entire herd as it existed on that date.

8. Richard Grossnickle testified separately about the funds expended in making payments on the mortgage on the property.

purpose of proving reimbursement for expenditures made in the business after the divorce. The trial court specifically denied any reimbursement for these expenditures; therefore, the admission of this evidence was harmless. This point of error is overruled.

■ Lee Ann Grossnickle next contends that there was no evidence to support the court's finding that there were outstanding community expenses of approximately $67,500 as of April 2, 1992. Richard Grossnickle's "Second Amended Inventory and Appraisement of Petitioner" lists community debts as of April 1992 (exclusive of debts secured by realty) totalling over $70,000. This document was admitted in evidence and was the subject of extensive questioning by counsel during Richard Grossnickle's testimony. Richard Grossnickle testified that he had paid these community debts. Although there is also evidence to the contrary, the trial court is the trier of fact, and this document constitutes evidence that the trial court could rely upon to reach its finding.

■ Lee Ann Grossnickle includes under this point of error that the trial court erred by not taking into account the positive effects upon Richard Grossnickle's personal federal income taxes of his payment of that portion of the community liabilities that constituted business expenses. The record does not reflect whether the trial court took this factor into consideration; however, we know of no rule or case in which the trial court has been required to consider the tax ramifications that may have resulted from community property becoming separate property. Because of the complexity of the tax laws, both benefits and disadvantages may flow from such a situation. While such factors may be taken into consideration by the trial court, failure to do so in this case was not error. This point of error is overruled.

Lee Ann Grossnickle next contends that the trial court erred by refusing to consider Richard Grossnickle's earnings during the appeal of the original decree. She also complains that the trial court refused to order production of Richard Grossnickle's federal income tax returns after 1991.

The Texas Supreme Court has stated that fault and disparity in the parties' incomes are two of the many factors the trial court should consider when dividing a marital estate. *Stafford v. Stafford*, 726 S.W.2d 14 (Tex.1987)(*citing Murff v. Murff*, 615 S.W.2d 696, 699 (Tex.1981), which provides that disparity *may* be considered).[9] In its fact finding, the trial court specifically stated that it had considered disparity of earning power between the parties, need for future support, contributing factors to the separation of the parties, the abilities of the parties to handle assets assigned them, and the possibilities of waste and expense in selling assets.

■ The court determined both parties to be professional business people, Richard Grossnickle being a medical doctor specializing in ophthalmology' (the treatment of diseases of the eyes) and Lee Ann Grossnickle being an attorney at law in the State of Texas. It is not necessary for the trial court to go beyond the date of the divorce in determining the actual income of the parties. Earning capacities and abilities should be established at the time of the divorce, and while these factors portend future earnings, it is not necessary to have the actual earning figures after the divorce. The trial court did not err in disallowing discovery about separate property income that occurred after the divorce, nor in refusing to reveal Richard Grossnickle's income tax returns after the date of the divorce. This point of error is overruled.

Lee Ann Grossnickle contends that the court erred by failing to characterize a diamond bracelet and a diamond ring as her separate property. She testified that the diamond bracelet in question was separate property, being a gift to her when her daugh-

9. Factors that may be considered by the trial court in making an unequal division of the community estate include disparity in incomes or earning capacities, fault in the breakup of the marriage, the spouses' capacities and abilities, benefits which the party not at fault would have derived from a continuation of the marriage, business and employment opportunities, education, relative physical conditions, relative financial conditions and obligations, disparity of ages, size of separate estates, custody of dependent children, and length of marriage. *Capellen v. Capellen*, 888 S.W.2d 539, 543 (Tex.App.—El Paso 1994, writ denied).

ter was born. This was undisputed in the evidence and was sufficient to overcome the presumption of community property. Richard Grossnickle had testified that this diamond bracelet was worth $7,000. He also testified that she had jewelry containing diamonds, rubies, sapphires, and emeralds, a gold necklace, and a gold and diamond watch. He testified that she had lost "a couple of these items" and had replaced the watch. He did not testify which items were lost. He testified that she spent between $15,000 and $20,000 on jewelry during the marriage. Lee Ann Grossnickle testified that the total jewelry in her possession was of an estimated worth of $4,000, of which $1,500 was separate property and $2,500 was community property. She produced a box of jewelry in the court for examination by the trial judge. The trial judge placed the value of the jewelry awarded to Lee Ann Grossnickle at $10,000.

Richard Grossnickle takes the position that the $25,000 engagement ring was not the original engagement ring that was a gift to Lee Ann Grossnickle, but was another ring purchased during the marriage and presumed to be community property. As stated in the next point of error, the whereabouts of the diamond engagement ring is not known at this time. Therefore, there is some question about what value should be attributed to Lee Ann Grossnickle for what may be a lost ring.

The court looked at the jewelry and stated that he was no connoisseur of diamonds. Lee Ann Grossnickle testified that certain items contained diamonds and gold of at least eighteen, maybe twenty-two carats and of white gold or platinum. She testified she had four bracelets, a watch, and two necklaces, which were community property. She valued the diamond bracelet, which she claimed as separate property, at $1,500, leaving a total value in her opinion of $2,500.

The trial court in its findings used the terminology in the award to Lee Ann Grossnickle, "Respondent's jewelry *of questionable value* at a value of $10,000." (Emphasis added.) The record in the present case contains conflicting evidence as to the value of the jewelry. The trial court had

before it evidence from one side concerning the amount of money that had been expended from the community for the jewelry in question and conflicting evidence as to what was community property and what was separate property. The court also viewed some of the jewelry in question and heard testimony about the diamonds and metals contained therein. Based upon this conflicting evidence, the trial court as trier of fact reached a figure in between the values offered by the parties. This was in the discretion of the trial court. This point of error is overruled.

Lee Ann Grossnickle also contends that the trial court erred by not making a specific finding about the $25,000 engagement ring and by failing specifically to award the ring to her. She testified she threw the ring at Richard Grossnickle. The police officer called by Lee Ann Grossnickle to testify about the ring did not recall whether the ring that she had thrown was a diamond ring. Lee Ann Grossnickle and Richard Grossnickle testified that they did not have the ring or know where it was. The judgment does not specifically mention the ring. In his brief, Richard Grossnickle takes the position that the court's award of all jewelry to Lee Ann Grossnickle included the diamond engagement ring.

Richard Grossnickle's concession that Lee Ann Grossnickle has been awarded the ring and the fact that he is not contesting this award is conclusive as to Lee Ann Grossnickle's ownership of the ring. Therefore, we hold that the engagement ring is the separate property of Lee Ann Grossnickle, as awarded to her in the divorce. If the trial court had determined that Richard Grossnickle possessed the ring, the trial court could have ordered it returned to Lee Ann Grossnickle. However, because the trial court, as the finder of fact, did not determine the location of the ring or that Richard Grossnickle had possession of the ring or had destroyed the ring, and because Richard Grossnickle has disclaimed any interest or ownership in the ring under the terms of the judgment, Lee Ann Grossnickle was not damaged by the failure of the court to specifically award the ring to her and by not adding the $25,000 to her portion of the

community estate. If the ring is located, it will be the separate property of Lee Ann Grossnickle. This point of error is overruled.

 Lee Ann Grossnickle contends that the trial court failed to consider specific bank accounts in its division of the community estate. Richard Grossnickle's initial inventory, which is in evidence, lists three checking accounts as community property: (1) People's National Bank $4,995 (optical shop account); (2) People's National Bank $5,337 (personal account); and (3) Lamar National Bank $15,117 (ranch account).

The three accounts in existence at the time of divorce were judicially admitted by Richard Grossnickle in his sworn inventory, and these three accounts, amounting to $25,449, should have been considered by the court in the division of the property. The trial court in the findings of fact states that it considered both parties' inventories. If these accounts in the inventory were considered, they were not listed as a part of the award to either party or reflected in the totals of the property awarded to the parties. This point of error is sustained to the extent that the trial court did not consider it as a part of the property awarded to Richard Grossnickle on the basis that his inventory reflected its existence and his possession of these accounts. This factor will be considered in our final determination of the case.

Lee Ann Grossnickle also contends that a Liberty Bank account should have been included. This account, however, was opened after the divorce was granted, and we have found no evidence in the record to reflect that this asset was traced to community property except that which may have come from accounts receivable from patients, which was already considered by the trial court in the net amount of $40,000. Because this asset came into existence after the divorce, there was no presumption that this was community property.

Other deposits about which Lee Ann Grossnickle complains were shown by the evidence to have been gifts from Richard Grossnickle's parents made after the divorce, and are thus his separate property. This contention is overruled.

 Lee Ann Grossnickle also contends that the trial court erred by admitting expert testimony about the value of Richard Grossnickle's optical shop when Richard Grossnickle had refused to produce the documents upon which that testimony was based. For that reason, the court refused to permit the expert to testify about the value of the practice. The court did permit the expert to testify that the facility and equipment in the shop were its sole worth, because it was a minimal optical shop operated solely as an adjunct to the doctor's practice.

The expert had been deposed and stated during his deposition that he would produce specific documents that he was using to support his appraisal valuing the optical shop as a going business. The documents were not produced, and the trial court accordingly refused to permit him to testify on that issue. The trial court, however, permitted the expert to testify that the sole value of the shop consisted of its hard assets, because the testimony was not based upon the non-produced documents, but rather upon the expert's personal knowledge and expertise. The fact that the expert did not produce documents, as agreed, on one aspect of his testimony did not necessarily invalidate or make inadmissible testimony not based upon those documents.

 Lee Ann Grossnickle's expert testified that the shop was worth $165,000 with Richard Grossnickle, and $100,000 without him. The record shows that Richard Grossnickle is an ophthalmologist, and the optical shop consists of a single room in which patients could purchase and be fitted with eyewear. The shop was not advertised, had no outside sign, and was described as an adjunct to the doctor's practice. Richard Grossnickle's expert witness testified the shop was not saleable separately from his medical practice. In his inventory, Richard Grossnickle valued the equipment, frame stock, and accounts of that portion of the business at $5,000 in 1992. Accordingly, the trial court was presented with conflicting testimony about the nature and the value of the shop, and the court entered a valuation in the division of $5,000 for the assets of Oak Creek Optical. The trial court had evidence upon

which it could determine that the shop was not saleable without Richard Grossnickle's medical practice. The trial court entered a finding of fact that "any goodwill that may exist is not capable of valuation as an asset apart from the individual's earning capacity, and, therefore, is not a property interest subject to division." Based upon this factual conclusion, the trial court could appropriately value the property based upon the physical assets. This point of error is overruled.

■ Lee Ann Grossnickle next contends that the court erred in finding that Lee Ann Grossnickle was responsible for the deterioration of the community property home pending appeal and in finding that it accordingly declined in value. In a related complaint, Lee Ann Grossnickle also complains because she was required to sell the house to Richard Grossnickle for $95,000, when she had earlier had an offer of $130,000 from a third party that Richard Grossnickle had refused to accept. The evidence shows that, as part of the first property division in April 1992, the house was awarded to Lee Ann Grossnickle. The house had been on the market before the appeal for $200,000, and Richard Grossnickle testified that at that time it had been appraised at and had a fair market value of $175,000.

Lee Ann Grossnickle testified that in June of 1992, she had an opportunity to sell the house, but did not testify about the amount of that offer. She also testified that she had another offer for the house for $125,000 in early 1993, but that the potential buyer's credit was insufficient. She stated that she had received an offer for $130,000 only a month before trial. However, the trial court, which corrected her statement and took judicial notice from prior hearings that she had received a written offer for $100,000, which would have required extensive costs to implement, netting only $92,500. The court then ordered the house sold to Richard Grossnickle for $95,000.

There was substantial testimony that the house was heavily damaged by mildew, roof leaks, removal of light fixtures, removal of yard fixtures, vandalism, destruction of one of the two air-conditioning units, and neglect of the in-ground pool. Based upon the testimony of the condition of the house and grounds and the fact that the change in condition occurred while the property was in Lee Ann Grossnickle's possession and control, the court did not err by holding her responsible for the damage that reduced its value by $80,000. This point of error is overruled.

■ Lee Ann Grossnickle further argues that Richard Grossnickle breached a fiduciary duty by not providing her with money with which to care for the house. Her theory is based upon the marital relationship. The time about which she complains was after the termination of the marriage. Richard Grossnickle did not owe her a fiduciary duty, nor was there a court order providing for Richard Grossnickle to fund the care for the house. This point of error is overruled.

Lee Ann Grossnickle next contends that the trial court erred by failing to consider in its division of the community that Richard Grossnickle had used $60,000 of community funds before the divorce to pay his attorney's fees. She also suggests that the court should have factored in the total of $315,000 paid by Richard Grossnickle to his attorneys after the divorce but before June 29, 1994. Richard Grossnickle testified that he spent $100,000 on attorney's fees after the divorce, but unless this was traced specifically to community assets in existence at the time of the divorce, this could not be considered an expenditure of community funds. He also testified that he spent approximately $60,000 on attorney's fees prior to the divorce.

■ The trial court has great discretion in deciding whether to award attorney's fees to either party and in determining the amount of attorney's fees to be so awarded. *Mills v. Mills,* 559 S.W.2d 687 (Tex.Civ. App.—Fort Worth 1977, no writ). This same principle applies to whether the trial court should consider a party's payment of attorney's fees out of community funds in the division of the property. Because the award of attorney's fees in a divorce case can be part of the property division, the trial court can award them to either party, regardless who is successful in the trial court or on appeal. *Parker,* 897 S.W.2d at 935; *Mat-*

*thews v. Matthews,* 725 S.W.2d 275, 280–81 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

Lee Ann Grossnickle does not seek a further award of attorney's fees in this case, but she asked the trial court, in dividing the assets of the estate, to consider the amounts expended by Richard Grossnickle for attorney's fees.

■ The allocation of attorney's fees is a factor to be considered by the court in making an equitable division of the community estate. *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1005 (1950); *Capellen v. Capellen,* 888 S.W.2d 539, 544 (Tex.App.—El Paso 1994, writ denied). Prior payments out of the community estate to attorneys in the divorce action are likewise to be taken into account in the division of the marital estate. *Eikenhorst v. Eikenhorst,* 746 S.W.2d 882, 890 (Tex.App.—Houston [1st Dist.] 1988, no writ). Those payments must necessarily come from the community, because the trial court has no authority to direct one party to expend separate property funds on the other's behalf for such fees, because the sole authority of a trial court to require payment of attorney's fees lies in the court's authority to divide the marital estate. *Chiles v. Chiles,* 779 S.W.2d 127, 129 (Tex.App.—Houston [14th Dist.] 1989, writ denied). In the present case, there was no showing of expenditures made by Lee Ann Grossnickle for attorney's fees.

■ Richard Grossnickle takes the position that Lee Ann Grossnickle has caused him to expend these funds, that she has retained at least eight attorneys at various times and acted pro se at other times as a duly licensed attorney, and that she has filed numerous motions both in the trial court and the appellate court which required responses from his attorney. The record reflects that Lee Ann Grossnickle has filed forty-one motions in connection with her second appeal and six petitions for mandamus relief with this Court.

The trial court found that "[e]ach side had incurred considerable legal expense, for which each party is responsible to some extent for a continuation of their former marital conflicts." The trial court could have concluded that both parties had similar community expenditures, both being involved in the same litigation, and that these expenditures canceled each other out in considering the division of the community assets. Money spent during the marriage is presumed to be community property. *Horlock v. Horlock,* 533 S.W.2d 52, 60 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ w.o.j.). There was no showing that money spent after the marriage for legal expenses was from community funds. The court's failure to give credit specifically to either party for expenditures of community funds on the divorce was not an abuse of discretion. This point of error is overruled.

Lee Ann Grossnickle next contends that the trial court erred by not reducing the face value ($363,000) of the Vanguard retirement account awarded to her to a net figure reflecting the actual value of the fund after a ten-percent tax penalty for early withdrawal and the thirty-one to thirty-three percent tax that she anticipated would be levied against the amount for federal income tax.[10]

■ A trial court can appropriately consider the tax liability for the sale of capital assets that *has been realized* by the parties at the time of the divorce, *i.e.,* existing tax liabilities. *Penick,* 783 S.W.2d at 197; *Robbins v. Robbins,* 601 S.W.2d 90, 92 (Tex. Civ.App.—Houston [1st Dist.] 1980, no writ). However, where the question of future taxation arises, a trial court errs in allowing a credit for a future tax figure that must be derived from speculation or surmise. *Harris v. Holland,* 867 S.W.2d 86, 88 (Tex.App.— Texarkana 1993, no writ). In the present case, early withdrawal triggering an additional tax would be at the election of Lee Ann Grossnickle after the divorce. The tax rate would depend upon the tax bracket of the taxpayer at that time and also the income tax law in effect at that time. This approach

10. The value of the account at the time of the divorce was $313,000. Lee Ann Grossnickle does not complain of the use of the later value of $363,000, which includes interest accumulated after the divorce.

would be analogous to allowing a discounted value on every piece of property because there might be future tax consequences if sold at a profit. The trial court did not abuse its discretion by failing to consider potential tax liability which might be incurred when the assets are withdrawn. This point of error is overruled.

Lee Ann Grossnickle next contends that the trial court erred by not considering in its division of the marital estate the $8,000 withdrawn from the Vanguard account by Richard Grossnickle and by considering the $16,000 IRA that Lee Ann Grossnickle had expended between 1992 and 1994. Richard Grossnickle testified that the $8,000 withdrawn from the account during 1992 was due to a payment erroneously made into the account that should have been made into an employee profit-sharing account. The trial court, as fact finder, could accept this testimony and properly disregard this withdrawal.

The $16,000 IRA, part of the community at the time of the divorce, was transferred to Lee Ann Grossnickle in the first property division and was depleted by Lee Ann Grossnickle after the divorce. The court did not err by including this expended resource as part of the community estate as of April 2, 1992. This point of error is overruled.

Lee Ann Grossnickle also contends that the trial court erred by not crediting the community estate for money that Richard Grossnickle spent on another woman. Richard Grossnickle testified that he had spent about $1,200 on gifts for another woman before the divorce. Lee Ann Grossnickle reviewed American Express receipts in evidence and concluded that he spent over $12,837 on the girlfriend. A determination of the amount spent on another woman out of community property during the marriage requires an accounting to the community. *Simpson v. Simpson*, 679 S.W.2d 39, 42 (Tex. App.—Dallas 1984, no writ). This type of

gift or expenditure amounts to fraud upon the community estate. It was not disputed that such expenditures were made. The amount of these expenditures was disputed and was a determination for the fact finder. However, the trial court should have required an accounting for these expenditures and specifically considered them in dividing assets. Failure to do so was error. This point of error is sustained.

Lee Ann Grossnickle contends that this Court's ruling denying her motion for contempt requires that 1994 values be used in the property division, because she states that this Court held in its disposition of one of her applications for writ of mandamus that the divorce was not final. This Court did not hold that the divorce was not final in any of these preliminary proceedings. In *Grossnickle v. Grossnickle*, this Court held the only item remaining to be determined after the first appeal was the division of the community estate. 865 S.W.2d 211 (Tex.App.— Texarkana 1993, no writ).

Lee Ann Grossnickle contends that the appeal from the April 2, 1992 judgment was a limited appeal, thus temporary spousal support and attorney's fees set forth in the first judgment remain final.

Temporary spousal support ends when the divorce is final. Tex. Fam.Code Ann. § 3.59 (Vernon 1993). A trial court may properly award temporary spousal support pending an appeal of a divorce. *Matter of Marriage of Joiner*, 755 S.W.2d 496, 499 (Tex.App.—Amarillo 1988), *modified on reh'g on other grounds*, 766 S.W.2d 263 (Tex. App.—Amarillo 1988, no writ). In the present case, however, Lee Ann Grossnickle did not appeal the divorce itself; so she was not entitled to spousal support during the appeal on other issues.

Next, we address the status of the attorney's fees awarded in the first suit.[11] Pursuant to Rule 40(a)(4) of the Texas Rules of Appellate Procedure, Lee Ann Grossnickle

---

11. The attorney's fees to which Lee Ann Grossnickle refers in the original divorce decree were set forth as follows:

IT IS ORDERED AND DECREED that JAMES R. RODGERS shall have and recover

judgment against RICHARD DEAN GROSSNICKLE for $20,000.00 for attorney's fees incurred in this cause, to be paid within ninety (90) days of the entry of this Decree.

gave timely notice of limitation of appeal, dated July 22, 1992, and limited her first appeal to the following:

1. Any and all issues relating to the division of the community property upon divorce, specifically including issues of valuation of the various assets; claims of an abuse of discretion in the ultimate division contained within the Decree of Divorce; newly discovered evidence, failure to consider pertinent evidence, improper admission and exclusion of pertinent evidence; and the denial of Respondent's right to trial by jury.

2. Any and all issues relating to the setting of child support, specifically including issues of net resources of the obligor and obligee and the factors which the court may consider in awarding support outside of the child support guidelines.

3. Any and all issues relating to specific terms and conditions of visitation/possession between the minor child and her father arising by virtue of both the Decree of Divorce and any modification order entered by the trial court in the post-trial stages of the proceedings.

■ An appellate court's jurisdiction is limited to the matters designated in the notice of limitation of appeal. *Baptist Memorial Hosp. System v. Bashara*, 685 S.W.2d 352, 354 (Tex.App.—San Antonio 1984), *aff'd*, 685 S.W.2d 307 (Tex.1985); *Anderson v. Anderson*, 618 S.W.2d 927, 930 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ dism'd as moot); 6 McDONALD'S TEXAS CIVIL PRACTICE § 26:2 (rev. 1992). Thus, the granting of the divorce was not pending on appeal.[12]

■ A severable portion of the case is not required to wait in limbo while the rest of the case is appealed, but becomes final because it is not subject to further appeal. In the case of *Garcia v. Employers Casualty Co.*, the court held that a portion of a suit against one defendant became final even

though a limited appeal was taken appealing against another defendant. 519 S.W.2d 685, 687 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). This same principle would apply to any unappealed issues in a limited appeal case.

■ Only severable portions of a judgment are subject to limitation on appeal. TEX.R.APP. P. 40(a)(4); *Hernandez v. City of Fort Worth*, 617 S.W.2d 923, 924 (Tex.1981). This Court has, in actions not involving the DTPA, held that claims for attorney's fees are severable. *Kazmir v. Suburban Homes Realty*, 824 S.W.2d 239, 246 (Tex.App.—Texarkana 1992, writ denied). In general, Texas courts have confirmed this view. *Penick v. Penick*, 783 S.W.2d 194; *Leal v. Leal*, 628 S.W.2d 168, 171 (Tex.App.—San Antonio 1982, no writ) (community property settlement suit); *see also, Atlantic Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 451 (Tex. App.—Texarkana 1993, writ denied) (where severance of attorney's fees was made on remand). The award of attorney's fees in the original suit was clearly severable.

Richard Grossnickle urges that the language limiting the appeal was broad enough to encompass attorney's fees related to those issues, and these issues comprise the main issues litigated below. The three areas designated for the limited appeal all begin with the language "any and all issues related to...." The first two categories then list a series of issues after the words *specifically including*. The word *including* is susceptible to different shades of meaning, but is generally employed as a term of enlargement and not a term of limitation or of enumeration. *Houston Bank & Trust Co. v. Lansdowne*, 201 S.W.2d 834 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.).

■ We must conclude that the limitation did not exclude the issue of attorney's fees as it related to the division of community property, the setting of child support, and the terms and conditions of visitation/possession of the minor child. Even though the issue of attorney's fees was not specifically raised as

---

12. The general language in our first opinion affirming the divorce is superfluous because the divorce itself was not before this Court, and this

Court was without jurisdiction to affirm what had already become final.

a point of error on appeal, it was not excluded from the appeal by the limiting language. When this Court affirmed the judgment insofar as it granted a divorce and determined the conservatorship and child support, it remanded the case in all other respects and for all other issues.[13] This would have included attorney's fees. We, therefore, cannot say that the matter of attorney's fees was not before the court for the second trial. The trial court in the second trial denied an award of attorney's fees. This point of error is overruled.

Lee Ann Grossnickle argues that the trial court abused its discretion by denying her the use of the estate's assets pending this appeal and that this order was void.[14] She contends that the trial court entered a void judgment on January 24, 1995. The cited document is not a judgment, but an order of the trial court providing that the assets be turned over to her only when the judgment becomes final.[15] In effect, this is a preservation order. This order is governed by TEX. FAM.CODE ANN. § 3.58(h) (Vernon 1993), which provides that

> Within 30 days after the date that an appeal is perfected, on the motion of any party or on the court's own motion, after notice and hearing, the court may make any order necessary for the preservation of the property and for the protection of the parties during the pendency of the

appeal as the court may deem necessary and equitable.[16]

(Emphasis added.)

 The appeal was perfected on November 18, 1994, when Lee Ann Grossnickle filed her appeal bond. A hearing was held within thirty days, on December 8, but even if that hearing covered this topic, that date is not relevant. Section 3.58(h) of the Family Code specifically states that the pertinent time is the date that the trial court makes the order. Temporary orders under this section may only be made within thirty days after perfection of the appeal. *Hare v. Hare,* 786 S.W.2d 747, 748 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Mortgage Funding Corp. v. Schuble,* 737 S.W.2d 339, 340 (Tex. App.—Houston [14th Dist.] 1987, orig. proceeding). The portion of the order denying Lee Ann Grossnickle the use of estate assets pending appeal is set aside as void.[17] This point of error is sustained.

Lee Ann Grossnickle next contends that the trial court erred by issuing an order limiting her freedom of speech in contravention of the First Amendment of the United States Constitution and Article I, § 8 of the Texas Constitution. Included in an order signed by the trial court on December 8, 1994 was the following provision:

> IT IS FURTHER ORDERED that the Respondent, LEE ANN GROSSNICKLE, shall refrain from any utterance, whether written or spoken, which in any manner

---

13. "We affirm the judgment insofar as it grants a divorce and determines conservatorship and child support; in all other respects, the judgment is reversed and the remaining issues are remanded for trial."

*Grossnickle v. Grossnickle,* 865 S.W.2d 211 (Tex. App.—Texarkana 1993, no writ).

14. This action by the trial court is not analogous to a supersedeas bond because Richard Grossnickle had no right to execute a judgment and take the property. Instead, the property was under the control of the court. This is in the nature of an injunction without a bond, and this restriction was not placed upon Richard Grossnickle. Because of our ruling on this point, we do not discuss the appropriateness of such an order.

15. It can be argued that the trial court retained plenary power to make this order based on TEX.R. CIV. P. 329b(e). This plenary power, however, is

limited by the more specific provisions of TEX. FAM.CODE ANN. § 3.58(h) (Vernon 1993), which provides time guidelines for preservation of property.

16. The trial court is in a better position than the appellate court to provide for the preservation of the property and the protection of the parties when needed, because the trial court can take testimony concerning the need for such orders; therefore, the system and parties would be better served if this statute had not cut off this authority after the appeal has been perfected for thirty days.

17. Lee Ann Grossnickle chastises this Court for not making a determination during the pendency of this appeal that this order of the trial court was void. Although she sought a mandamus concerning contempt of Richard Grossnickle, no request was ever made of this Court to declare this trial court order void.

reflects upon the integrity of this Court, or any officer of this Court, opposing counsel, or any Supreme Court Justice or Appellate Justice of this State, in any district or region, at any time.[18]

A major purpose of the freedom of speech provisions in our Constitutions is to protect the free discussion of governmental affairs, including public officials. As the Texas Supreme Court said in *Davenport v. Garcia*, the presumption in all cases under the freedom of speech provision of the Texas Constitution is that pre-speech sanctions or prior restraints are unconstitutional. 834 S.W.2d 4, 9 (Tex.1992). The Court stated further in that opinion that prior restraints are subject to judicial scrutiny with a heavy presumption against their constitutional validity. The so-called gag order has been permitted in limited circumstances where extrajudicial statements by participants in the trial were likely to interfere with the court's ability to conduct a fair and impartial trial. These types of orders have primarily been limited to criminal cases.

In the present case, nothing in the record justifies the broad prohibition and interference with Lee Ann Grossnickle's constitutional right of free speech. This order is set aside, and this point of error is sustained.

Lee Ann Grossnickle next contends that the trial court erred by not identifying and valuing Richard Grossnickle's good will in his business and dividing that value as part of the marital estate. Under the authority of *Nail v. Nail*, 486 S.W.2d 761 (Tex. 1972), good will is not a divisible portion of an individually-owned private professional practice. *See Guzman v. Guzman*, 843 S.W.2d 486 (Tex.1992). This point of error is overruled.

In her final point of error, Lee Ann Grossnickle contends that, in summary, the trial court erred by awarding a disproportionate amount of property to Richard Grossnickle. She grounds this argument on the previously discussed contentions that the court erred in

its calculations or by setting values at particular dates.

We must now determine whether the points in which we have found error in specific parts of the division of the community estate materially affected the trial court's just and right division of the entire community estate and constitute an abuse of discretion.

The trial court erred in failing to consider three community bank accounts, which Richard Grossnickle admitted in his inventory to be in existence at the time of the divorce, totalling $25,449. This amount should have been considered as a part of the assets awarded to Richard Grossnickle.

The trial court improperly failed to consider the amounts expended from community property funds on another woman. Richard Grossnickle testified that this amount could not have been in excess of $1,280. Lee Ann Grossnickle testified that based on his use of the American Express credit card, the expenditures were in the amount of $12,847.

Taking the highest possible figure represented by the testimony, the errors above could result in a change to the community of $38,396 total. According to the findings of the trial court, the value of the net assets awarded to Richard Grossnickle was $628,739, and the value of the assets awarded to Lee Ann Grossnickle was $648,000. This amounts to a community property total of $1,276,739. At the most, these errors amount to three percent of the community estate. Reversal is not required unless the errors in valuation make the division so disproportionate as to constitute an abuse of discretion. Based upon the division of the entire community estate, we find that these errors do not constitute an abuse of discretion. This point of error is overruled.

The judgment of the trial court is affirmed as to the division of the property. The order prohibiting Lee Ann Grossnickle access to the property awarded to her is set aside; and

18. In his reply brief, Richard Grossnickle takes the position that after discussing the matter with the trial court the parties elected to have this injunction deleted; however, we do not find this deletion agreement in the record on the pages cited by Richard Grossnickle, and the hearing to which he refers predates the date of the order by approximately six weeks.

the order limiting Lee Ann Grossnickle's freedom of speech is set aside.