Juan CARRASCO, Appellant,

v.

TEXAS TRANSPORTATION INSTITUTE, TEXAS A & M UNIVERSITY SYSTEMS, Appellee.

No. 10–95–018–CV.

Court of Appeals of Texas, Waco.

Oct. 4, 1995.

Rehearing Overruled Nov. 8, 1995.

Allen J. Segal and Daniel J. Mann, Law Offices of Allen J. Segal, P.C., Bryan, for appellant.

Dan Morales, Attorney General of Texas, Jorge Vega, First Asst. Attorney General, Laquita H. Hamilton, Deputy Attorney General for Litigation, Toni Hunter, Chief, General Litigation Division, Allison H. Eccles, Asst. Attorney General, General Litigation Division, Austin, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

Juan Carrasco appeals from a "directed verdict" in a bench trial that ordered his former employer, Texas Transportation Institute, Texas A & M University Systems (TTI), to pay him a net recovery of $2,892.17 in unpaid overtime compensation under the Fair Labor Standards Act of 1938 (FLSA). 29 U.S.C.A. § 207(a)(1) (West Supp.1995). Carrasco complains on appeal that the court erred in the following respects:

- in finding that TTI asserted a valid good-faith defense to his claim for unpaid overtime compensation;
- in ruling that TTI was not bound by its responses to requests for admissions;
- in finding that under the FLSA he was entitled only to half-time compensation for overtime hours worked; and
- in failing to award him reasonable attorney's fees and costs.

## STANDARD OF REVIEW

Relying on its trial brief filed at the close of Carrasco's evidence, TTI moved for a "directed verdict." Technically, TTI requested the court to render a judgment. *Grounds v. Tolar Indep. School Dist.*, 856 S.W.2d 417, 422 n. 4 (Tex.1993) (Gonzalez, J., concurring). There are significant distinctions between a directed verdict in a jury case and a motion for judgment in a non-jury case. *Id.* One distinction is the standard of review on appeal. *Id.* Because in a trial to the bench the judge is the arbiter of factual and legal issues, an appellate court must presume that the court ruled on the sufficiency of the evidence. *Qantel Business Sys. v. Custom Controls*, 761 S.W.2d 302, 305 (Tex.1988). Therefore, the court's factual rulings will stand unless there is legally or factually insufficient evidence to support them. *Id.* However, we review the court's interpretation and application of the FLSA and other questions of law *de novo*. *Drollinger v. State of Ariz.*, 962 F.2d 956, 958 (9th Cir.1991); *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

## FACTUAL BACKGROUND

Juan Carrasco worked for TTI from August 23, 1990, to October 4, 1992, installing traffic monitors at certain locations throughout Texas. On March 20, 1991, TTI's Assistant Agency Director sent a written notification to Carrasco informing him that his position was determined to be non-exempt under the FLSA. Further, the letter informed him that, beginning March 28, 1991, he was to record any hours worked in excess of forty per week, for which he would be compensated at a rate of time and one-half of his regular rate. *See* 29 U.S.C.A. § 207(a)(1).

On July 1, 1991, without written notification to Carrasco, and without any change in his duties, TTI promoted Carrasco to Research Technician. According to TTI's determination, this "new position" was exempt from the FLSA overtime-pay requirements. *Id.* § 213(a)(1). On September 25, 1991, TTI asked the university to review Carrasco's job description for a second determination of the

status of his position under the FLSA. The university again concluded that the position was exempt from overtime-pay.

Carrasco's job was funded by a grant which expired in October 1992, and as a result, his position was terminated at that time. As the end of his employment drew near, Carrasco questioned TTI about his unpaid overtime. At that time, TTI sought the guidance of a Department of Labor investigator, who determined that Carrasco's position was not exempt. To determine the amount of unpaid wages owed to Carrasco, TTI relied upon the figures submitted by Carrasco because it did not keep such records. And, although TTI admitted at trial that there was no agreement or "clear understanding" entitling it to calculate Carrasco's unpaid overtime under the fluctuating-work-week method, that is the method TTI employed. Overtime Compensation, 29 C.F.R. § 778.114 (1994). This method allows for recovery of overtime at a rate of *one-half* of an employee's regular rate. *Id.*

Carrasco received a letter from TTI on April 9, 1993, advising him that TTI had decided to pay him $3,637.10 in back wages. Carrasco did not accept the figures calculated by TTI and filed suit on August 30, 1993. Because the FLSA has a two-year statute of limitations absent a willful violation, Carrasco is only seeking to recover unpaid overtime compensation for the two-year period beginning August 30, 1991. 29 U.S.C.A. § 255(a) (West 1985).

## AVAILABILITY OF GOOD–FAITH DEFENSE UNDER THE FLSA

TTI moved for a judgment on the grounds that it acted in good faith on "the opinion or interpretation of the Wage and Hour Division of the Department of Labor," citing section 259 of the Portal–To–Portal Pay Act.[1] 29 U.S.C.A. § 259 (West 1985). In the alternative, TTI argued that, even if it owed Carrasco unpaid overtime compensation, it should not be liable for liquidated damages under the FLSA because it made a good-faith attempt to determine the correct amount owed to Carrasco and relied upon the calculations of the Department of Labor.[2]

The court granted TTI's "Motion for Directed Verdict," but it ordered TTI to pay Carrasco only $2,892.17 in unpaid overtime compensation. Carrasco's point on appeal challenges the court's good-faith finding under section 259. However, the court's findings and conclusions are only consistent with a finding of good faith under section 260, which exempts TTI from liquidated damages, and are inconsistent with a such finding under section 259, which would have exempted TTI from all liability.[3] Apparently, Carrasco brought his first point on appeal to ensure that the court's language in the order and its findings and conclusions are not construed as a finding of good faith under section 259, but only under section 260.

■ We interpret the court's order as denying TTI's claim under section 259, because

**1.** "[N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938 ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of" ... "the Administrator of the Wage and Hour Division of the Department of Labor." Portal–To–Portal Pay Act, 29 U.S.C.A. § 259(a), (b)(1) (West 1985).

**2.** "In any action ... to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938 ... if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the

[FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260.

**3.** The court found: (1) "[TTI] acted in good faith and had reasonable grounds to believe it was not violating the Fair Labor Standards Act." (2) "[TTI] made a good faith attempt to fully compensate [Carrasco] by seeking out the expertise of the Department of Labor, relying on the Department's calculations and then conforming to its determination." (3) "[Carrasco] should be awarded $3,637.10, in conformity with the determination of the Wage and Hour Division of the U.S. Department of Labor." (4) "[Carrasco] should not be awarded liquidated damages because [TTI] acted in good faith and had reasonable grounds to believe it was not violating the Act. 29 U.S.C. § 260."

the court, in fact, ordered TTI to pay back wages. Moreover, granting TTI's motion for judgment under section 259 would have been erroneous as a matter of law. The law is well established that an exemption from liability under section 259 can only be based on an employer's reliance upon a written administrative regulation, order, ruling, approval, or interpretation of the Administrator of the Wage and Hour Division of the Department of Labor—not upon that of an investigator as was indisputably the case here. 29 U.S.C.A. § 259(a), (b)(1); *Hodgson v. Square D Company*, 459 F.2d 805, 811 (6th Cir.1972); *Murphy v. Miller Brewing Company*, 307 F.Supp. 829, 838 (E.D.Wis.1969) (holding that an employer's reliance upon an investigator's summary of an employer's total liability under the FLSA does not entitle the employer to protection under section 259).

We question whether TTI sustained its burden by a preponderance of the evidence that it was exempt from discretionary liquidated damages under section 260. TTI's good-faith argument focused on its "good-faith attempt to determine the correct amount owed to Plaintiff," rather than on any alleged good-faith determination that Carrasco's position was exempt and that TTI had reasonable grounds for believing that its job classification was not in violation of the FLSA. 29 U.S.C.A. § 260. However, Carrasco has not attacked the court's good-faith finding under section 260.

Therefore, considering Carrasco's first point of error, we affirm the court's finding of good faith under section 260 and its conclusion that a violation of the FLSA occurred. However, for the reasons that follow, we will hold that the court erred in its determination of the amount of unpaid wages.

## ATTORNEY GENERAL'S RESPONSES TO DISCOVERY BIND TTI

Carrasco propounded two sets of interrogatories, requests for admissions, and requests for production to TTI. The attorney general, representing TTI, filed responses to the discovery requests.[4]

Approximately eleven months later, during Carrasco's presentation of his case in chief, he attempted to introduce into evidence TTI's responses to his requests for admissions. The attorney general objected, citing section 402.004 of the Texas Government Code, which provides that "[a]n admission, agreement or waiver made by the attorney general in an action or suit to which the state is a party does not prejudice the rights of the state." TEX.GOV'T CODE ANN. § 402.004 (Vernon 1990). Following arguments of counsel, the court sustained the attorney general's objection to the evidence and refused to consider the evidence contained in TTI's admissions.

■ The Texas Supreme Court has made clear that, when the state becomes a litigant in the courts, it is bound by the same rules of procedure that bind all other litigants, except where special provision is made to the contrary. *Lowe v. Texas Tech University*, 540 S.W.2d 297, 301 (Tex.1976); *Texas Department of Corrections v. Herring*, 513 S.W.2d 6, 7 (Tex.1974); *Texas Dept. of Human Services v. Green*, 855 S.W.2d 136, 144–45 (Tex. App.—Austin 1993, writ denied). We hold that section 402.004 is not a "provision to the contrary" exempting TTI from compliance with the procedural rules.

■ Although interrogatory responses, not responses to requests for admissions, were at issue in *Herring*, the Supreme Court reasoned that Rule 168 operates to clarify facts, and that the state could not be prejudiced by a full revelation of the facts involved in the case. TEX.R.CIV.P. 168; *Herring*, 513 S.W.2d at 8. Likewise, admissions within the context of Rule 169 are calculated to simplify trials and eliminate matters about which there is no real controversy. TEX.R.CIV.P. 169; *North River Ins. Co. v. Greene*, 824 S.W.2d 697, 700 (Tex.App.—El Paso, 1992, writ denied). In other words, their purpose is to *clarify facts,* the very objective that the Supreme Court held did not prejudice the state. *See id; Herring*, 513 S.W.2d at 8. Courts have held that other objectives of requests for admissions are improper. *E.g.,*

---

4. The attorney general has authority to represent TTI because it is a part of the Texas A & M University System, a state university. *See* TEX. CONST. art. IV, § 22.

*North River Ins. Co.,* 824 S.W.2d at 700. Therefore, as long as the requests for admissions are proper requests, designed to delineate contested facts from uncontested facts, the state is not prejudiced by complying with Rule 169, just like any other litigant. *See Herring,* 513 S.W.2d at 7.

Two years after *Herring* was decided, the Court addressed the effect of section 402.004 on requests for admissions. *Lowe,* 540 S.W.2d at 300–01. In *Lowe,* it appears as though the attorney general contended that requests for admissions were impermissible under section 402.004; and, further, because interrogatories were based on the responses to requests for admissions they, too, were impermissible. *Id.* at 301. The trial court in *Lowe* struck the interrogatories and requests for admissions propounded to the state. *Id.* at 300. The appellate court held that the trial court, in striking the discovery requests, erred *as to the interrogatories. Id.* In reversing the court of appeals and remanding the cause to the trial court, the Supreme Court noted that the state is not exempt from the rules of procedure; that it will not be prejudiced by a revelation of the facts; and, further, that *"the Attorney General may raise for ruling [an] objection that any called for admission, if made, would prejudice the rights of the State and hence would be ineffective under the provisions of art. 4411* [currently § 402.004]." *Id.* at 301 (emphasis added).

At no time prior to trial did TTI, through the attorney general, lodge an objection and obtain a ruling as to whether a specific request for admission would prejudice the rights of the State. Rather, only after Carrasco had relied on the admissions, had failed to develop evidence from other sources, and was offering the admissions into evidence at trial did the attorney general object on TTI's behalf.

■ Considering that the principal purpose of Rule 169 admissions is to clarify facts, "prejudicing the state's rights" is an unlikely result in responding to proper requests. TEX.GOV'T CODE ANN. § 402.004; *Herring,* 513 S.W.2d at 8; *North River Ins. Co.,* 824 S.W.2d at 700. Should the attorney general, acting on behalf of the state, elect to contest the validity of a specific request for an admission, he must do so in the normal course of discovery; that is, the state, like other litigants, must file a specific, timely objection to the request in accordance with Rule 169. TEX.R.CIV.P. 169. Section 402.004 does not operate to insulate the state from trial errors involving admissions. *Texas Dept. of Human Services v. Green,* 855 S.W.2d at 145.

■ Because the attorney general did not object to the requests for admissions under section 402.004 in accordance with Rule 169, TTI waived any objection it may have had to the requests, and all facts contained in TTI's admissions are conclusively established. TEX.R.CIV.P. 169. TTI's admissions prove the following: (1) Carrasco "was entitled to be paid overtime at the rate of one and one-half times his hourly rate, for all hours worked at TTI in excess of 40 hours in any week between September 1, 1991 and August 30, 1993;" (2) during the period from September 1, 1991, to July 31, 1992, Carrasco earned $10.55 per hour and worked a total of 560 hours of overtime; and (3) during the period from August 1, 1992, to September 30, 1992, Carrasco earned $10.66 per hour and worked a total of 150 hours of overtime. The evidence is illustrated by the following chart.

| RELEVANT DATES | ADMITTED HOURLY RATE | TIME AND ONE–HALF RATE | ADMITTED OVERTIME WORKED | UNPAID WAGES |
|---|---|---|---|---|
| 9/1/91—7/31/92 | $10.55 | $15.83 | 560 hours | $ 8,864.80 |
| 8/1/92—9/30/92 | $10.66 | $15.99 | 150 hours | $ 2,398.50 |
| **TOTAL UNPAID OVERTIME** | | | | $11,263.30 |

The chart illustrates that TTI admitted Carrasco was entitled to recover unpaid overtime compensation totaling $11,263.30. Because the foregoing was conclusively established, the court's conclusion regarding the permissible method of calculating overtime compensation owed to Carrasco and its conclusion that the total owed was $3,637.10, minus deductions, are erroneous. We sustain Carrasco's second and third points.

## ATTORNEY'S FEES AND COSTS UNDER FLSA

Section 216 of the FLSA provides that, in actions for unpaid wages or unpaid overtime compensation, the court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C.A. § 216(b) (West Supp. 1995) (emphasis added). This section has been construed to be mandatory, regardless of the size of the award or any settlement offers. *Lee v. Coahoma County, Miss.*, 937 F.2d 220, 227 (5th Cir.1991); *Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir.1994) (noting that, to vindicate the congressionally-identified policies and rights, undue emphasis should not be placed on the amount of the plaintiff's recovery in determining an award of attorney's fees). Moreover, the court's conclusion that Carrasco was not a "prevailing party" warranting an award of attorney's fees and costs is erroneous because it improperly determined the amount of Carrasco's unpaid overtime compensation.

■ At trial, Carrasco's attorney testified on his own behalf concerning his fees. His narrative testimony spanned three pages of the statement of facts and specifically detailed the work he did in this case, including preparing specific documents, reviewing specific documents and materials, attending numerous conferences with his client and with opposing counsel, appearing at a deposition, as well as participating in numerous meetings and telephone conferences. He testified that he is familiar with fees charged in Brazos County on FLSA cases, and that a rate of $125 per hour is a customary and reasonable rate in the county. He further testified that, up to the date of trial, he had invested in excess of 150 hours in preparing the case for trial. Finally, he testified that a reasonable amount of attorney's fees in this case is $18,750.

TTI did not object to his testimony. On cross-examination, TTI attempted to attack a statement that Carrasco's attorney made in his opening statement: "[W]e will show through evidence [that a reasonable attorney's fee] is $12,500." Other than its attack on that statement, whether his fees were $12,500 or $18,750, TTI's counsel did not question the reasonableness of the time spent in preparation of the case, of specific tasks completed, or his testimony proving that his hourly rate was reasonable. Opening statements are not evidence. *Border Apparel–East, Inc. v. Guadian*, 868 S.W.2d 894, 898 n. 6 (Tex.App.—El Paso 1993, no writ); and *see* TEX.R.CIV.EVID. 603. Counsel's testimony, the only evidence regarding attorney's fees, was "not contradicted by any other witness, or attendant circumstances and [was] clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon [and thus may be] taken as true, as a matter of law." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex.1990) (holding that attorney's fees may be awarded by the court of appeals as a matter of law).

Carrasco filed a certified bill of costs, executed by the district clerk of Brazos County, which proved a total of $1,274 costs incurred in the case. The court refused Carrasco's request for costs. However, as already noted, the FLSA mandates an award of costs when a plaintiff is awarded "any judgment." 29 U.S.C.A. § 216(b). Therefore, the court erred in refusing to award Carrasco the costs proven up and on file in the cause. We sustain Carrasco's fourth point.

## DISPOSITION

We reverse the judgment of the court and render the judgment that it should have rendered. TEX.R.APP.P. 80(c). We render judgment that Carrasco recover from TTI unpaid overtime compensation in the amount of $11,-

263.30, attorney's fees in the amount of $18,750, and costs in the amount of $1,274.