Thomas M. Hatch v. Williams et ux
















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-235-CV

     THOMAS M. HATCH,
                                                                         Appellant
     v.

     EDWARD O. WILLIAMS
     AND EVELYN L. WILLIAMS,
                                                                         Appellees
 

From the 18th District Court
Johnson County, Texas
Trial Court # C200000444
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Edward Williams filed a reformation suit on the ground of mutual mistake regarding a
conveyance of real property. Thomas Hatch filed an answer and asserted what he characterizes
to this Court as a “counterclaim in trespass to try title.” Following a bench trial, the trial court
ordered the deed reformed in favor of Williams and denied Hatch’s counter-claim. We affirm the
trial court’s judgment.
I. BackgroundWilliams orally agreed to sell Hatch 87.2 feet of a 120-foot tract (and the house located
thereon) on July 28, 1997. Williams sought to keep the remaining 32.8 feet as additional parking
for his store, located on adjoining property. The legal description in the deed describes the entire
120-foot tract, instead of the agreed-upon 87.2 feet. The attorney handling the transaction testified
that his office had simply made a mistake in attaching the wrong property description to the
paperwork. Neither party knew of the mistake at the time of closing and the parties began jointly
using the tract of land at issue.


 Williams discovered the mistake on or about October 30, 2000.
On November 3, 2000, Williams filed suit to reform the deed, and Hatch filed an answer
asserting, among others, the affirmative defenses of the limitations bar of section 16.024 of the
Texas Civil Practice and Remedies code (TCPRC), estoppel, ratification, waiver, and laches. 
Tex. Civ. Prac. & Rem. Code Ann. § 16.024 (Vernon 2002) (providing a three-year limitation
to a suit to recover real property held by another in peaceable and adverse possession under title
or color of title). Hatch included in his answer what he now terms a “counterclaim in trespass to
try title.” In this, he merely reasserts his allegation that he is the owner of the property by virtue
of section 16.024 and asks the court to quiet title in his name. Williams filed an answer to Hatch’s
counterclaim, but failed to properly serve this answer. The trial court granted reformation due
to mutual mistake and denied Hatch’s counterclaim. No findings of fact or conclusions of law
were requested or filed. In four points, Hatch argues that the trial court erred by: 1) denying his
motion to disregard Williams’s answer; 2) failing to grant a default judgment on his counterclaim;
3) denying his motion for judgment; and 4) failing to grant a new trial.
II. Applicable Law
      In a non-jury trial where no findings of fact or conclusions of law are filed or properly
requested, it is implied that the trial court made all necessary findings to support its judgment. 
Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996); Roberson v. Robinson, 768
S.W.2d 280, 281 (Tex. 1989). The judgment of the trial court must be affirmed if it can be
upheld on any legal theory supported by the evidence. Worford v. Stamper, 801 S.W.2d 108, 109
(Tex. 1990) (citing In re W.E.R., 669 S.W.2d 716, 717 (Tex. 1984)).
III. Motion to Disregard Plea of “Not Guilty” and Motion for Default Judgment
      Hatch’s first issue challenges the trial court’s ruling on his motion to disregard Williams’s
answer. His second issue contends that the trial court erred in not granting Hatch a default
judgment against Williams. Both of these issues are based on Hatch’s counterclaim against
Williams and are premised on that counterclaim being a trespass to try title claim. Specifically,
Hatch argues that Texas Rule of Civil Procedure 788 requires Williams to file a plea of “not
guilty” in order to put his defensive issues before the trial court on the issue of who holds title.


 
Tex. R. Civ. P. 788. He further argues that because Williams did not properly serve his plea of
“not guilty” to Hatch’s trespass to try title claim, the trial court should have struck the answer and
granted Hatch a default judgment. We disagree with both arguments. Hatch’s counterclaim did
not meet the pleading requirements of Rule 783, and therefore it is not a trespass to try title claim. 
Tex. R. Civ. P. 783 (requiring that the petition in a trespass to try title suit state “[t]hat the
defendant . . . unlawfully entered upon and dispossessed [plaintiff] of such premises, stating the
date, and withholds from [plaintiff] the possession thereof”). Thus, under Rule 92, Williams was
deemed to have pleaded a general denial. Tex. R. Civ. P. 92 (when a cross-claim or counterclaim
is served on a party making an appearance in an action, the party so served, in the absence of a
responsive pleading, is deemed to have pleaded a general denial to those claims). Accordingly,
we overrule issues one and two.
IV. Motion for Judgment
      In his third issue, Hatch contends that the trial court erred by denying his motion for
judgment. We note that there are significant distinctions between a directed verdict in a jury case
and a motion for judgment in a non-jury case. Carrasco v. Texas Transp. Inst., 908 S.W.2d 575,
576 (Tex. App.—Waco 1995, no writ). One distinction is the standard of review on appeal. Id. 
Because the judge in a bench trial is the arbiter of factual and legal issues, an appellate court must
presume that the court ruled on the sufficiency of the evidence. Id. (citing Qantel Bus. Sys, Inc..
v. Custom Controls Co., 761 S.W.2d 302, 305 (Tex. 1988)). Thus, the court’s factual rulings will
stand unless there is legally or factually insufficient evidence to support them. Id. However, we
review questions of law de novo. Id. (citing Mercer v. Bludworth, 715 S.W.2d 693, 697 (Tex.
App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.)).
a. Legal Standard
      When the party complaining of legal sufficiency did not have the burden of proof at trial we
conduct our review by considering only the evidence and inferences that support the finding, and
disregard contrary evidence and inferences. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497,
499 (Tex. 1995). We can find the evidence legally insufficient if: 1) there is a complete absence
of evidence for the finding; 2) there is evidence to support the finding, but rules of law or evidence
bar the court from giving any weight to the evidence; 3) there is no more than a mere scintilla of
evidence to support the finding; or 4) the evidence conclusively establishes the opposite of the
finding. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997) (citations
omitted).
      A trial court’s findings of fact are reviewed for factual sufficiency of the evidence under the
same legal standards as those applied to review jury verdicts for factual sufficiency of the
evidence. Hitzelberger v. Samedan Oil Corp., 948 S.W.2d 497, 503 (Tex. App.—Waco 1997,
pet. denied). When the party complaining of factual insufficiency did not have the burden of proof
at trial we conduct our review by considering all the evidence in the record both for and against
the finding, and we can find the evidence factually insufficient only if we conclude that the finding
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Checker Bag Co. v. Washington, 27 S.W.3d 625, 633
(Tex. App.—Waco 2000, pet. denied). Reversal could occur because the finding was based on
weak evidence, or because the proponent’s proof, although adequate if taken alone, is
overwhelmed by the opponent’s contrary proof. Checker Bag, 27 S.W.3d at 633 (citations
omitted). If we find the evidence to be factually sufficient, we are not required to detail all the
evidence supporting the finding. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.
1998) (citations omitted). However, if we find the evidence to be factually insufficient, we must
detail all the evidence relevant to the issue and clearly state why the finding is so against the great
weight and preponderance of the evidence that it is manifestly unjust. Id.
      When the party that had the burden of proof at trial complains of legal insufficiency of an
adverse finding that party must demonstrate that the evidence establishes conclusively, i.e., as a
matter of law, all vital facts in support of the finding sought. Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001). We first examine the record for evidence supporting the adverse
finding, ignoring all evidence to the contrary. Id. If more than a scintilla of evidence supports
the adverse finding, our inquiry ends. Id. “More than a scintilla of evidence exists where the
evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.” Burroughs Wellcome Co., 907 S.W.2d at 499
(citations omitted); Beard v. Beard, 49 S.W.3d 40, 55 (Tex. App.—Waco 2001, pet. denied).
      When the party complaining of the factual sufficiency of the evidence had the burden of proof
at trial it must demonstrate that the adverse finding is contrary to the great weight and
preponderance of the evidence. Dow Chemical Co., 46 S.W.3d at 242; Beard, 49 S.W.3d at 55. 
We weigh all the evidence, and we can set aside the adverse finding only if it is so against the
great weight and preponderance of the evidence that it is clearly wrong and unjust. Dow Chemical
Co., 46 S.W.3d at 242. In doing so, we must detail the evidence and state in what regard the
contrary evidence greatly outweighs the evidence in support of the adverse finding. Id. We will
apply these standards to the arguments raised by Hatch.
b. Reformation Due to Mutual Mistake
      Hatch argues that the trial court erred by denying his motion for judgment because Williams
offered no evidence and factually insufficient evidence to support his reformation claim. A party
is entitled to the reformation of a deed upon proving that the parties “had reached an agreement
. . . but the [deed] did not reflect the true agreement because of a mutual mistake.” Thalman v.
Martin, 635 S.W.2d 411, 413 (Tex. 1982). Further, the fact that an error was caused by a
scrivener’s failure to embody the true agreement of the parties in a written instrument is a proper
ground for reformation. Cornish v. Yarbrough, 558 S.W.2d 28, 32 (Tex. Civ. App.—Waco 1977,
no writ).
      Williams testified that the parties’ agreement was to convey only the 87.2-foot tract. Hatch
testified that he intended to purchase only the 87.2-foot tract, and that he knew Williams intended
to sell only the 87.2-foot tract. The attorney who handled the transaction testified that his office
had erroneously attached the wrong property description to the documents. Thus, the record
contains some evidence and factually sufficient evidence to support the trial court’s judgment. In
other words, the finding that the parties’ agreement was not reflected in the property description
due to mutual mistake is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.
      Hatch also argues that the trial court erred in granting the reformation of the deed because the
trial court did not order Williams to reimburse Hatch for any expenses Hatch incurred in
maintaining the disputed land. Hatch points to no pleadings requesting this equitable relief and
no evidence introduced to support such a claim. We hold this argument waived.
c. Adverse Possession
      Hatch next contends that Williams’s claim does not survive the three-year limitations period
regarding the defense of adverse possession. Tex. Civ. Prac. & Rem. Code Ann. § 16.024
(Vernon 2002). Adverse possession is statutorily defined as “an actual and visible appropriation
of real property, commenced and continued under a claim of right that is inconsistent with and is
hostile to the claim of another person.” Id. § 16.021(1) (Vernon 2002); Rhodes v. Cahill, 802
S.W.2d 643, 645 (Tex. 1990). “It has been said that such possession must not only be actual, but
also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of such a character as to
indicate unmistakably an assertion of a claim of exclusive ownership in the occupant.” Rhodes,
802 S.W.2d at 645 (quoting Satterwhite v. Rosser, 61 Tex. 166, 171 (1884)).
      The evidence shows that the parties jointly used the disputed tract. Williams testified that 
the parties shared expenses for removing tree limbs from the disputed tract and customers of
Williams’s store frequently parked on the tract without objection. Hatch’s testimony confirmed
that Williams’s customers parked on the tract and that the parties jointly used the land. This joint
use negates Hatch’s adverse possession claim because it refutes an unmistakable claim of exclusive
ownership. Hatch failed to conclusively establish his adverse possession claim. Likewise, the
court’s refusal to find for Hatch on his adverse possession claim is not against the great weight and
preponderance of the evidence.
d. Estoppel and Ratification
      Hatch pleaded estoppel and ratification as equitable defenses to preserve his rights and
preclude Williams from claiming title under mutual mistake. An essential element of both
equitable estoppel and ratification is knowledge of the material facts. Samms v. Autumn Run
Community Improvement Assn., 23 S.W.3d 398, 403 (Tex. App.—Houston [1st Dist.] 2000, pet.
denied) (ratification); Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 548 (Tex. App.—Austin
1999, pet. denied) (estoppel); Calhoun v. Killian, 888 S.W.2d 51, 55 (Tex. App.—Tyler 1994,
writ denied) (estoppel); K.B. v. N.B., 811 S.W.2d 634, 638 (Tex. App.—San Antonio 1991, writ
denied) (ratification).
      The evidence establishes that, for over three years, Williams did not know that the deed did
not correctly describe the agreed-upon 87.2-foot tract, but instead described the entire 120-foot
tract. He added that Hatch did not inform him of the mistake in the deed.


 Therefore, Hatch
failed to conclusively establish the estoppel and ratification defenses. In addition, the court’s
refusal to find for him on the estoppel and ratification defenses is not contrary to the great weight
and preponderance of the evidence.
e. Waiver
      Hatch also asserted waiver as a defense to Williams’s claim for reformation. Waiver is the
intentional relinquishment of a known right, or intentional conduct inconsistent with claiming that
right. Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987); Vessels v.
Anschutz Corp., 823 S.W.2d 762, 765 (Tex. App.—Texarkana 1992, writ denied). Intent is the
key element in establishing waiver. G.H. Bass & Co. v. Dalsan Props.-Abilene, 885 S.W.2d 572,
577 (Tex. App.—Dallas 1994, no writ).
      Hatch and Williams both testified that the intended conveyance was the 87.2-foot tract, and
not the entire 120-foot tract incorrectly described in the deed. There is no evidence that Williams
intentionally relinquished his claim to the disputed tract at any time. In fact, the evidence shows
that he continued to use the disputed property as additional parking for his store. Accordingly,
Hatch failed to conclusively establish the waiver defense. Likewise, the trial court’s refusal to find
for him on the waiver defense is not contrary to the great weight and preponderance of the
evidence.
f. Laches
      In order to assert the affirmative defense of laches, a defendant must show 1) unreasonable
delay by one having legal or equitable rights in asserting them, and 2) a good faith change of
position by another to his detriment because of the delay. Ft. Worth v. Johnson, 388 S.W.2d 400,
403 (Tex. 1964). In this case, Williams filed his suit for reformation of the deed less than one
month after discovering the mistake. The trial court’s refusal to find for a defense of laches is not
contrary to the great weight and preponderance of the evidence.
g. Summary of Claims and Defenses
      In sum, Hatch failed to conclusively, i.e., as a matter of law, establish any of his defenses,
and the trial court’s refusal to find for him on any of his defenses is not contrary to the great
weight and preponderance of the evidence. In addition, the trial court’s finding of mutual mistake
is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
We overrule issue three.
V. Motion for New Trial
      Hatch argues in his fourth issue that the trial court erred by failing to grant a new trial because
Williams’s failure to serve an answer on Hatch’s counterclaim denied Hatch due process because
Hatch had no notice of Williams’s defenses. A trial court has wide discretion to deny a motion
for new trial and the court’s ruling will not be disturbed on appeal in the absence of a showing of
an abuse of that discretion. Delgado v. Hernandez, 951 S.W.2d 97, 98 (Tex. App.—Corpus
Christi 1997, no writ). Hatch and his attorney appeared and tried the case without objection to
Williams’s defenses. Hatch never claimed surprise or unfair prejudice pertaining to the legal
theories offered at trial by Williams. He also did not present any relevant evidence in his motion
for new trial that he had not already offered at trial. Thus, we find that the trial court did not
abuse its discretion by denying Hatch’s motion for new trial. Accordingly, we overrule issue four.
      The judgment of the trial court is affirmed. 

                                                                         REX D. DAVIS
                                                                         Chief Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed June 4, 2003
[CV06]