NUMBER 13-08-00722-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      
 
JUAN HERNANDEZ,                                                Appellant,
v.
 
YOLANDA HERNANDEZ,                                          Appellee.
                                                                                                                                      
  
On appeal from the 197th District Court 
 of Cameron County, Texas.
                                                                                                                      

  MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Garza
 Memorandum Opinion by Chief Justice Valdez

          Appellant, Juan Hernandez, appeals from a divorce decree which ended his
marriage to appellee, Yolanda Hernandez, and divided the community estate. By a single
issue, Juan challenges the trial court’s division of the community estate by arguing that the
trial court erred in entering a finding that there was no evidence of community
indebtedness. We affirm.
 
I. Background
          Juan and Yolanda married on March 20, 1973, and after thirty-four years of
marriage, Juan filed for divorce on April 5, 2007. After a bench trial, the trial court entered
its “Final Decree of Divorce” on October 8, 2008. The divorce decree neither references
nor provides for a division of any debt acquired during the marriage. On December 3,
2008, the trial court entered findings of fact and conclusions of law. The trial court found
that the community estate consisted of various “personal property” as well as: 
A.       La Cantera Special Events Center [“La Cantera”] and Juan’s Catering
business, including:
 
          a.       3.900 acres out of the South part of Block 19, Los Ebanos
Properties Subdivision, Brownsville[,] Cameron County,
Texas[,]
 
          b.       improvements, furniture, fixtures, equipment[,] and inventory[,]
 
          c.        checking account at First National Bank[;] and
 
B.       Marital residence [described as,]
 
          a.       Lot 20, Block 2, Quail Hollow Unit No. 2, Abstract 2,
Brownsville, Cameron County, Texas[.]
 
The trial court also found that: “Neither party presented evidence of any liabilities of the
community estate. Therefore, the [c]ourt finds there are no liabilities of the community
estate.” One-half of the community estate was awarded to each spouse—Yolanda
received property valued at $129,464 which consisted of, among other things, the marital
residence, and Juan received property valued at $1,022,535 which consisted of, among
other things, La Cantera. In order to achieve a “just and right division,” Juan was ordered
to pay $446,535.50 to Yolanda. 
          On appeal, Juan asserts that the evidence is legally insufficient to support the trial
court’s finding that there are no liabilities of the community estate “because the undisputed
evidence establishes as a matter of law that the community estate had substantial debt”
comprised of La Cantera’s long-term liabilities—two First National Bank loans totaling
$656,548.13. Juan prays that we modify the Final Decree of Divorce to reflect this liability
and argues that the $446,535.50 amount that he was ordered to pay to Yolanda should be
reduced by half the above-mentioned long-term liabilities. While this appeal was pending,
Yolanda filed a motion to dismiss. Before considering the merits of Juan’s appeal, we first
address Yolanda’s motion to dismiss. See Garza v. Garza, 155 S.W.3d 471, 474 (Tex.
App.–San Antonio 2004, no pet.). 
II. Motion to Dismiss
          In her motion to dismiss, Yolanda argues that Juan’s appeal must be dismissed
under the acceptance of benefits doctrine.


 We disagree.
          Under the acceptance of benefits doctrine, “[a] litigant cannot treat a judgment as
both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he
cannot afterward prosecute an appeal therefrom.” Carle v. Carle, 149 Tex. 469, 234
S.W.2d 1002, 1004 (1950). However, narrow exceptions to the acceptance of benefits
doctrine exist; the doctrine does not apply if: (1) reversal of the judgment could not
possibly affect Juan’s right to the benefits already secured under it, see Waite v. Waite,
150 S.W.3d 797, 804 (Tex. App.– Houston [14th Dist.] 2004, pet. denied) (citing Tex. State
Bank v. Amaro, 87 S.W.3d 538, 544 (Tex. 2002); Carle, 234 S.W.2d at 1004; Blaylock v.
Blaylock, 603 S.W.2d 254, 255 (Tex. Civ. App.–Houston [14th Dist.] 1980, no writ)); (2)
economic circumstances compelled Juan to accept benefits, see Smith v. Tex. Commerce
Bank Corpus Christi, 822 S.W.2d 812, 814 (Tex. App.–Corpus Christi 1992, writ denied);
or (3) Juan’s acceptance of cash benefits under the judgment was not prejudicial to
Yolanda. See Trevino v. Trevino, 555 S.W.2d 792, 795-96 (Tex. Civ. App.–Corpus Christi
1977, no writ). 
          Yolanda points to two specific actions that she contends constitute Juan’s voluntary
acceptance of the benefits of the judgment. Yolanda asserts that: (1) “[o]n October 14,
2008, [Juan] pledged the real property awarded to him in the Final Decree of Divorce . . .
as collateral for a loan from Falcon Bank in the sum of $720,000”; and (2) Juan removed
certificates of deposit that were awarded one-half to each spouse from First National Bank
and “deposited them into [Juan]’s name only at Falcon Bank.” The record supports these
assertions; therefore, we must grant Yolanda’s motion to dismiss unless Juan satisfies an
exception to the acceptance of the benefits doctrine.
          Juan argues that the acceptance of the benefits doctrine does not bar his appeal
because a reversal of the judgment could not possibly affect his right to the benefits—the
loan and certificates of deposit—already secured under it. Specifically, Juan contends that
his “sole issue on appeal involves only his right to a further recovery by seeking a
reduction” of the $446,535.50 that he was ordered to pay to Yolanda; thus, his appeal does
not involve his “rights” in the certificates of deposit or the property used to secure the loan. 
Juan frames his appellate issue as a “legal sufficiency” challenge. However, in family law
cases, legal sufficiency is not an independent ground of error; instead, it is a factor in our
assessment of whether the trial court abused its discretion in its property division. Zorilla
v. Wahid, 83 S.W.3d 247, 252 (Tex. App.–Corpus Christi 2002, no pet.). Concluding that
the trial court abused its discretion in the property division requires reversal of the trial
court’s judgment. See Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985). Reversal of
a final divorce decree often results in the trial court’s re-division of the community property
in order to achieve a just and right division.


 See Waite, 150 S.W.3d at 808 (“If we were
to reverse because the trial court erred in characterizing [certain property] as community,
the trial court would almost certainly re-divide the community property.”); Bloom, 935
S.W.3d at 947-48 (holding that “the benefits [appellant] has accepted, including her share
of the community estate, relief from community debts, and the ordered child support, could
be affected” where appellant requested a new trial after defaulting in a divorce proceeding).
          The trial court divided the community property evenly between Juan and Yolanda
in the underlying divorce decree. Juan does not contend that the original division was
entirely erroneous; instead, he only argues that the trial court failed to acknowledge and
divide a substantial amount of debt incurred by the parties. The property accepted by Juan
is not the subject of his appeal. By his appeal, Juan seeks only further recovery in the form
of a reduction of the $446,535.50 that he was ordered to pay to Yolanda. Thus, if we were
to reverse the underlying judgment and remand to the trial court for a just and right division,
it is highly likely that the trial court would refrain from re-dividing all of the community
property and instead would simply reduce the amount of payment that it has ordered Juan
to pay to Yolanda by half of the amount of debt. See Kline v. O’Quinn, 874 S.W.2d 776,
781 (Tex. App.–Houston [14th Dist.] 1994, writ denied) (holding that acceptance of the
benefits doctrine did not apply where appellant accepted compensatory damages but on
appeal raised only issues regarding punitive damages and attorney’s fees). The facts
presented in this case seem to indicate that the reversal of the judgment could not possibly
affect Juan’s right to the benefits already secured under it. Although this exception is
narrow, out of an abundance of caution, we conclude that Juan is not barred by the
acceptance of benefits doctrine from asserting this appeal. Accordingly, Yolanda’s motion
to dismiss is DENIED. 
III. Liabilities of the Community Estate
          By his sole issue, Juan contends that the evidence is legally insufficient to support
the trial court’s finding that there are no liabilities of the community estate because the
evidence proves a matter of law that the community estate included debt totaling
$656,548.13.
A.       Standard of Review
          Trial courts have wide discretion in making a just and right division of marital
property; we review a trial court’s division for an abuse of discretion. Tex. Fam. Code Ann.
§ 7.001 (Vernon 2006); Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981); Zorilla, 83
S.W.3d at 252. As previously stated, in family law cases, the traditional sufficiency
standards of review overlap with the abuse-of-discretion standard of review; thus, legal
insufficiency is not an independent ground of error but is a relevant factor in our
assessment of whether the trial court abused its discretion. Zorilla, 83 S.W.3d at 252. We
presume the trial court did not abuse its discretion in dividing the estate, and we will not
disturb the division on appeal unless the appellant demonstrates a clear abuse of
discretion. Murff, 615 S.W.2d at 698.
          The test for abuse of discretion is whether the trial court acted arbitrarily or
unreasonably, or whether it acted without reference to any guiding rules or principles. See
Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); see also Lozano v. Lozano, No.
13-08-00536-CV, 2009 WL 4882816, at *3 (Tex. App.–Corpus Christi Dec. 17, 2009, no
pet.) (mem. op.). A trial court does not abuse its discretion if there is some evidence of a
substantive and probative character to support its decision. Garza v. Garza, 217 S.W.3d
538, 549 (Tex. App.–San Antonio 2006, no pet.); see also Lozano, 2009 WL 4882816, at
*4. 
          When an appellant attacks the legal sufficiency of an adverse finding on an issue
on which he has the burden of proof, he must demonstrate on appeal that the evidence
establishes, as a matter of law, all vital facts in support of his issue. Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241-42 (Tex. 2001); see also Rojas v. Rojas, No. 13-02-167-CV,
2004 WL 43227, at *2 (Tex. App.–Corpus Christi Jan. 8, 2004, no pet.) (mem. op.). If there
is no evidence to support the finding, we will examine the entire record and determine if the
contrary proposition is established as a matter of law. Francis, 46 S.W.3d at 241. We will
conclude that the evidence is legally insufficient only if the contrary proposition is
conclusively established. Id. In a legal sufficiency review, we must view the evidence in
the light most favorable to the verdict, crediting favorable evidence if a reasonable
fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could
not. City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005). The final test for legal
sufficiency must always be whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review. Id. at 822.
B.       Analysis
          As the party seeking entitlement to an award of the properties alleged in his petition
for divorce, it was Juan’s burden in the trial court to adequately describe the assets and
liabilities of the community estate and establish their respective values. See Capellen v.
Capellen, 888 S.W.2d 539, 542-43 (Tex. App.–El Paso 1994, writ denied); Haley v. Haley,
713 S.W.2d 801, 803 (Tex. App.–Houston [1st Dist.] 1986, no writ); see also Suarez v.
Suarez, No. 13-04-108-CV, 2006 WL 1194960, at *2 (Tex. App.–Corpus Christi May 4,
2006, no pet.) (mem. op.). Juan contends that he satisfied his burden because “[t]he
evidence admitted establishes as a matter of law that the community estate owed a
substantial debt of at least $656,548.13.” We disagree.
          Juan points to the following as “documents of record that establish a substantial
community debt”: (1) a financial statement dated December 31, 2006; (2) his sworn
inventory filed on September 4, 2007; (3) his supplemental sworn inventory filed on
September 9, 2008; (4) Juan and Yolanda’s tax returns for the years 2004 and 2005; (5)
the 2004 and 2005 “General Ledgers” of La Cantera; and (6) one page of an expert report
admitted into evidence by Yolanda’s expert witness. Juan also asserts that his testimony,
Yolanda’s testimony, and an “[a]dmission by [Yolanda]’s counsel” establish debt of the
community estate as a matter of law.
          1. Financial Statement, Tax Returns, and General Ledgers
          At the June 2008 divorce proceeding, the trial court admitted La Cantera’s “Financial
Statement for the period ending December 31, 2006” into evidence. The balance sheet
reflects that as of December 31, 2006, La Cantera’s “long[-]term liabilities” consisted of
three First National Bank notes—identified as #345732, #1700273, and #6001892—
totaling $656,548.13. The trial court also admitted Juan and Yolanda’s tax returns for the
years 2004 and 2005. The tax returns reflect that Juan and Yolanda paid interest to First
National Bank in 2004 and 2005. La Cantera’s 2004 and 2005 “General Ledgers” were
also admitted into evidence. The 2004 General Ledger describes La Cantera’s long-term
liabilities as one “GMAC note” and three First National Bank notes totaling
$420,086.22—these notes are identified as #301172, #316248, and #316252. The 2005
General Ledger describes La Cantera’s long-term liabilities as one “Bank of America” note,
one “GMAC note” and one First National Bank note for $517,137.69—identified as
#345732.  
          The value of community assets and liabilities is generally determined at the date of
divorce or as close to it as possible. See Handley v. Handley, 122 S.W.3d 904, 908 (Tex.
App.–Corpus Christi 2003, no pet.); Grossnickle v. Grossnickle, 935 S.W.2d 830, 837 (Tex.
App.–Texarkana 1996, writ denied); see also Suarez, 2006 WL 1194960, at *2. Juan failed
to provide evidence of La Cantera’s liabilities at the time of, or close to the time of his
divorce from Yolanda. Although the general ledgers and tax returns offer evidence of La
Cantera’s long-term liabilities in 2004 and 2005, the parties’ divorce hearing was held in
June 2008. The general ledgers and tax returns offer no indication as to the existence or
the amount of liabilities of the community estate at the time of the divorce. See Handley,
122 S.W.3d at 908; Grossnickle, 935 S.W.2d at 837; see also Suarez, 2006 WL 1194960,
at *2. Juan also contends that La Cantera’s December 31, 2006 financial statement
establishes “that the community estate owed a substantial debt of at least $656,548.13.” 
However, even if this was the value of Juan and Yolanda’s indebtedness as of December
31, 2006, it does not conclusively prove the existence or the amount of indebtedness at
the time of divorce. See Handley, 122 S.W.3d at 908; Grossnickle, 935 S.W.2d at 837;
see also Suarez, 2006 WL 1194960, at *2. 
          2. Sworn and Supplemental Inventory and Expert Report
          On September 4, 2007, Juan filed a sworn inventory with the trial court listing First
National Bank account number “17002793” and account number “345732,” with the
payment amounts of $1,565.74 and $5,732.21, respectively. The sworn inventory does
not state the frequency of the payments, and no amount is listed in the “Amount Owed”
column of the inventory. The information on the purported First National Bank loans listed
on the supplemental sworn inventory filed on September 9, 2008, mirrors the information
on Juan’s September 4, 2007 sworn inventory. 
          A report prepared by Darryl Baird, Yolanda’s expert witness who testified regarding
the value of La Cantera, was admitted into evidence at the June 2008 divorce proceeding. 
Juan points to the “[p]rincipal on [r]eal [e]state [l]oans” and “[i]nterest expense-real estate”
listed in the report for the years 2004-2007, as proof that La Cantera had substantial debt. 
Juan also points to a footnote in the report that states that “[a] total of $65,936 are actual
principal amounts paid on two real estate loans . . .” as further proof of La Cantera’s
liabilities at the time of Juan and Yolanda’s divorce. However, neither the sworn
inventories nor the excerpt from Baird’s report adequately describe the liabilities of the
community estate or establish their respective values. See Handley, 122 S.W.3d at 908;
Grossnickle, 935 S.W.2d at 837; see also Suarez, 2006 WL 1194960, at *2. 
          3. Juan’s Testimony
          Additionally, Juan asserts that his testimony during the June 2008 divorce
proceeding establishes the existence and amount of a community liability. Specifically,
Juan points to an answer he gave during cross-examination regarding a $12,500 liability
listed on a document entitled “Preliminary Personal Financial Statement for Mr. [and] Mrs.
Juan Hernandez” which had previously been admitted into evidence:
[Yolanda’s Counsel]:         Okay. And it shows on the following page First
National Bank $12,500. What was that?
 
[Juan]:                                I have no idea what this is. I know that at First
National I only have two loans, one for the
original which is like around maybe close to
497,000, and then another one for 165,000.
 
          No further testimony was given as to these two loans. Juan does not clarify what
these loans pertained to, when the loans were obtained, whether the original amounts of
the loans were $497,000 and $165,000, or whether these amounts were the balance of the
notes on the loans at the time of the divorce.
          During Juan’s cross-examination, Yolanda’s counsel attempted to offer into
evidence “payoff statements” dated April 30, 2008, for two loans from First National Bank. 
Juan testified that he did not have his eyeglasses and was unable to read or identify the
exhibit; the exhibit was not admitted into evidence. During direct examination of Yolanda,
Yolanda’s counsel again attempted to admit the purported “payoff statements” into
evidence. Juan’s counsel objected to the “authenticity” of the payoff statements. The trial
court sustained Juan’s counsel’s objection, and the exhibit was not entered into evidence.
          On appeal, Juan urges that we consider the excluded “payoff statements” as
evidence of liability of the community estate. However, excluded evidence cannot be
considered proof to establish that the community estate had substantial debt. See State
Bar of Tex. v. Grossenbacher, 781 S.W.2d 736, 738 (Tex. App.–San Antonio 1989, no writ)
(“In order for evidence to be considered as proof in a case, it must be admitted at trial.”). 
Thus, the “payoff statements” offered by Yolanda and excluded by the trial court do not
serve as proof of liabilities of the community estate at the time of the divorce. See id.
          4. Counsel’s Admission
          During his opening statement, Yolanda’s trial counsel stated, “There is a note to
First National Bank, which is the only indebtedness against La Cantera, for $599,564 . . . .” 
Juan asserts that this “admission” by Yolanda’s counsel is proof of liabilities of the
community estate. Opening statements are not evidence. See Fort Worth Hotel Ltd.
P’ship v. Enserch Corp., 977 S.W.2d 746, 756 (Tex. App.–Fort Worth 1998, no pet.);
Carrasco v. Tex. Transp. Inst., 908 S.W.2d 575, 580 (Tex. App.–Waco 1995, no writ);
Border Apparel-East, Inc. v. Guadian, 868 S.W.2d 894, 898 n.6 (Tex. App.–El Paso 1993,
no writ). Therefore, even if this statement was an “admission,” we cannot consider it in our
analysis. See Grossenbacher, 781 S.W.2d at 738.
          Viewing the evidence in the light most favorable to the trial court’s finding, crediting
favorable evidence if a reasonable fact-finder could and disregarding contrary evidence
unless a reasonable fact-finder could not, we conclude that the evidence presented did not
conclusively establish as a matter of law “that the community estate owed a substantial
debt of at least $656,548.13.” See City of Keller, 168 S.W.3d at 807. Thus, the evidence
was legally sufficient to support the trial court’s adverse finding. See Capellen, 888 S.W.2d
at 543. We conclude that the trial court did not abuse its discretion in dividing the marital
estate. See Zorilla, 83 S.W.3d at 252. Accordingly, we overrule Juan’s sole issue.
IV. Conclusion
          We affirm the judgment of the trial court.
 
 ROGELIO VALDEZ
                                                                           Chief Justice
 

Delivered and filed the 
30th day of September, 2010.